**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**UNITED STATES OF AMERICA**

**v.**                                           **Case No. 4:18cr76-RH/MAF**

**JOHN THOMAS BURNETTE,**                        <u>**UNDER SEAL**</u>

     **Defendant.**

_____/

<u>**GOVERNMENT'S OPPOSITION TO DEFENDANT'S
MOTION FOR A PRETRIAL *JAMES* HEARING**</u>

The United States of America, by and through undersigned counsel, respectfully submits this opposition to Defendant John Thomas Burnette ("Burnette")'s Sealed Motion for a Pretrial *James* Hearing asking this Court to conduct a pretrial *James* hearing into the existence of a conspiracy among Burnette and former co-defendants Scott Charles Maddox ("Maddox") and Janice Paige Carter-Smith ("Carter-Smith"), claiming that Maddox "has denied that there was any such conspiracy with Burnette." ECF No. 334 at 2.

In support of the Motion, the defendant selectively and misleadingly quotes from Maddox's proffer and change of plea hearing ███████████████████████████ ████████████████████████████████████ Despite the defendant's attempts to minimize the evidence, at trial the government will present substantial evidence of a conspiracy among Burnette, Maddox, and Carter-Smith that extends

from in or about December 2013 to on or about May 2019. Moreover, Burnette has not identified any specific statements that he seeks to exclude, and there are very few statements that the government may seek to admit for their truth as co-conspirator statements. This Court should therefore exercise its discretion to not hold a pretrial *James* hearing because it would waste judicial resources where there is and will be sufficient evidence of the existence of a conspiracy presented at trial.

## I.  BACKGROUND

On December 11, 2018, a federal grand jury sitting in this District returned a forty-four count indictment charging Maddox and Carter-Smith with engaging in a years-long racketeering conspiracy using an enterprise called "Governance" to commit fraud, extortion, and bribery. ECF No. 1.

On May 9, 2019, the grand jury returned a Superseding Indictment adding nine charges against Burnette for his role in the conspiracy and for making false statements to federal agents. ECF No. 54. The Indictment and Superseding Indictment contained several allegations that Maddox and Carter-Smith had solicited and accepted bribes from individuals and companies, identified only by anonymized pseudonyms. *See* ECF No. 1 at ¶¶ 49-116; ECF No. 54 at ¶¶ 51-119.

On August 6, 2019, Maddox and Carter-Smith both pleaded guilty to Counts Twenty (Honest Services Wire Fraud), Twenty-Three (Honest Services Mail Fraud), and Forty-One (Conspiracy to Defraud the United States) of the Superseding

Indictment. ECF Nos. 133 (Maddox) and 138 (Carter-Smith). Count Twenty specifically related to the allegations involving Company B; Count Twenty-Three related to allegations involving Company F (the FBI undercover company, Southern Pines Development); and Count Forty-One related to the conspiracy to defraud the Internal Revenue Service by filing false tax returns. The government agreed to dismiss the remaining counts at sentencing.

As part of their plea agreements, Maddox and Carter-Smith each signed a statement of facts and admitted those facts at their change of plea hearing on August 6, 2019. *See* ECF No. 132 (Maddox) and 137 (Carter-Smith). In admitting to the statements of facts, Maddox and Carter-Smith admitted to the allegations in the Superseding Indictment relating to Company B and Person A (¶¶ 61-71); Company C and Person B (¶¶ 72-79); Company D and Person C (¶¶ 80-88); Company E and Person D (¶¶ 89-96); and Company F (Southern Pines Development) (¶¶ 103-116). The only allegations that Maddox and Carter-Smith did not admit are those relating to Company A, Person E, and Person F (ECF No. 54 at ¶¶ 51-60, 97-102).

On October 2, 2019, the grand jury returned a Second Superseding Indictment. ECF No. 145. The Second Superseding Indictment removed Maddox and Carter-Smith as defendants and the allegations that pertained only to them.

Specifically, it removed the allegations relating to Company A (*see* ECF No. 54[1] at ¶¶ 51-60); Company B and Person A (*id*. at ¶¶ 61-71); Company C and Person B (*id*. at ¶¶ 72-79); Company D and Person C (*id*. at ¶¶ 80-88); Company E and Person D (*id*. at ¶¶ 89-96); and Person E and Person F (*id*. at ¶¶ 97-102).

The Second Superseding Indictment did not add any new counts but did add to the RICO conspiracy (Count One) allegations detailing a previously uncharged bribe paid by Burnette to Maddox (the "Hotel Vote Abstention"). ECF No. 145; *see id*. at ¶¶ 21-40. These new allegations relate to a $100,000 bribe paid by the defendant through KaiserKane, a company over which the defendant exerted operational and financial control, to Governance Services—a company nominally owned by Carter-Smith but over which Maddox exerted significant *de facto* control—in exchange for Maddox's agreement to abstain from a vote before the Tallahassee City Commission. *Id*.

## II.  LEGAL STANDARD

Although the Federal Rules of Evidence prohibit the introduction of hearsay, a statement offered against a party which was "made by the party's coconspirator during and in furtherance of the conspiracy" is defined as non-hearsay and is admissible if relevant. FED. R. EVID. 801(d)(2)(E), 802.

---

[1]  The FBI undercover company (Southern Pines Development) referred to as "Company C" in the Second Superseding Indictment was referred to as "Company F" in the Indictment and Superseding Indictment.

To admit a statement under this rule, the government must establish by a preponderance of the evidence that: (1) a conspiracy existed, (2) the defendant and the declarant were members of the conspiracy, and (3) the statement was made during the course and in furtherance of the conspiracy. *See, e.g.*, *United States v. Byrom*, 910 F.2d 725, 734 (11th Cir. 1990). Whether or not the government has made a sufficient showing is a preliminary question for the Court. FED. R. EVID. 104(a); *Byrom*, 910 F.2d at 734 (*citing Bourjaily v. United States*, 483 U.S. 171, 175–76 (1987)).

In *United States v. James*, 590 F.2d 575 (5th Cir. 1979), the Fifth Circuit instructed that trial courts "should, whenever reasonably practicable, require the showing of a conspiracy and of the connection of the defendant with it before admitting declarations of a coconspirator." *Id*. at 582. However, since *James*, the Fifth and later Eleventh Circuits have made clear this determination need not be made prior to trial. *E.g., United States v. Fernandez*, 797 F.2d 943, 945 (11th Cir. 1986) ("The district court has discretion to admit the statements subject to proof of these three requirements during the course of the trial."); *United States v. Marquardt*, 695 F.2d 1300, 1304 (11th Cir. 1983) (noting that a pretrial *James* hearing "is discretionary, not mandatory").

The Eleventh Circuit has identified situations where *James* hearings are not necessary or even encouraged, such as where the hearing could drain judicial time

and resources. *See United States v. Lippner*, 676 F.2d 456, 464 (11th Cir. 1982) (upholding the denial of a *James* motion in part because the hearing would waste resources, which the *James* court wanted to prevent). Courts have also declined to hold *James* hearings based on the amount of evidence of the conspiracy. *United States v. Espino-Perez*, 798 F.2d 439, 441 (11th Cir. 1986) (affirming the trial court's decision to deny a *James* motion, in part, because there was "ample evidence of conspiracy").

## III.  LEGAL ARGUMENT

This Court should exercise its discretion not to hold a pretrial *James* hearing because (1) holding a *James* hearing will waste judicial resources by requiring the government to present its case twice ███████████████████████████████ ██████████████████████████████████████████████████████████ ████████████████████ ; (2) there will be ample evidence of a conspiracy among Burnette, Maddox, and Carter-Smith, including evidence of the Hotel Vote Abstention aspect of the conspiracy, which the defendant does not challenge; and (3) the defendant's assertions of Maddox's "denial" of the existence of a conspiracy with Burnette with regard to Southern Pines are based on selective and misleading quotes from Maddox's change of plea hearing.

**A.** **This Court should decline to hold a *James* hearing because it would waste judicial resources by requiring the government to present its case twice and there are very few statements that may be admitted for their truth solely as co-conspirator statements.**

This Court should exercise its discretion not to hold a pretrial *James* hearing because it will require the government to present its lengthy case twice and therefore waste substantial judicial time and resources. Whether a conspiracy existed depends on the totality of the evidence, so the government would likely be required to present substantial portions of its entire two-week case during a *James* hearing to ensure the Court had a complete understanding of the conspiracy. This alone is sufficient reason for this Court to exercise its discretion not to hold a *James* hearing. *See United States v. Lippner*, 676 F.2d 456, 464 (11th Cir. 1982)

Presenting a lengthy case twice would be particularly wasteful because there will likely be very few statements admitted for their truth under the co-conspirator hearsay exemption. Burnette has identified no particular out of court statements ███ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ████████████████████████████████████ Any statement by Burnette, of course, is admissible as a statement by a party-opponent. FED. R. EVID. 801(d)(2)(A). ███ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████

7

Given the anticipated low volume of co-conspirator statements, this Court can most efficiently decide the admissibility of each statement at trial.

Holding a separate pretrial *James* hearing where the government will present most, if not all, of its case and potentially hundreds of documents and recordings for a handful of statements is undoubtedly a waste of judicial time and resources, and so this court should decline to hold such a hearing.

**B.** **This Court should decline to hold a *James* hearing because there will be ample evidence of a conspiracy among Burnette, Maddox, and Carter-Smith.**

This Court should also decline to hold a *James* hearing because the government will present at trial ample evidence of a conspiracy among Burnette, Maddox, and Carter-Smith that extends well past ██████████████████████ ██████████████████████████████ *See Espino-Perez*, 798 F.2d at 441–42. Furthermore, by the time the Court must decide whether the government has met its evidentiary burden to show that the conspiracy included the Southern Pines transactions and ██████████████████████████████████ ████████, the Court and the jury would have already heard significant evidence from several witnesses about the Hotel Vote Abstention—the aspect of the conspiracy which the defendant does not argue the government will not be able to prove, for evidentiary purposes. ECF No. 333 at 2 ██████████████████

██████████████████████████████████████████████

████████████████████████████████ *id*. at 6 ("At this juncture the

only part of the RICO conspiracy that is subject to Burnette's objection pertains to

Southern Pines Development where Maddox himself maintains that no conspiracy

existed as alleged in Count I.").  This court can consider that prior course of conduct

when determining whether the conspiracy encompassed the Southern Pines

transactions as well.

Even if the defendant had not conceded that the government's evidence will

show, for evidentiary purposes, a conspiracy among Burnette, Maddox, and Carter-

Smith with regard to the Hotel Vote Abstention, ████████████████████████

███████████████████████████████████████████████

████████  The existence of this aspect of the conspiracy is relevant to the Southern

Pines aspect of the conspiracy because as it shows a course of conduct to bribe

Maddox wherein Burnette arranges for Maddox to be paid through Governance, with

the knowledge of Carter-Smith, in exchange for official acts by Maddox.  This

course of conduct was later repeated with regard to Southern Pines.

1. <u>The evidence will show an agreement to commit
bribery with regard to the hotel vote abstention.</u>

As is evidenced by the defendant's concession, the government's evidence of

a conspiracy among Burnette, Maddox, and Carter-Smith with regard to the Hotel

Vote Abstention will be substantial. ██████████████████████

██████████████



Exhibit B to ECF No. 333 at 3 (emphasis added).  Simply put, this is a bribe and a
conspiracy.



[REDACTED] It will also establish a pattern of corrupt conduct—Burnette obtaining payments to Governance in exchange for official action by Maddox—which was repeated with regard to Southern Pines, and which this Court may consider in evaluating whether the government has shown a conspiracy as to that aspect by a preponderance of the evidence.

2.  The evidence will show an agreement to commit bribery with regard to Southern Pines.

It is in the context of the Hotel Vote Abstention that this court will consider whether the government has established by a preponderance of the evidence that there was a conspiracy among Burnette, Maddox, and Carter-Smith. *See United States v. Perez*, 489 F.2d 51, 61 (5th Cir. 1973) ("If the totality of these types of evidence is adequate to show a concert of action, all the parties working together

---

2 [REDACTED]

understandingly, with a single design for the accomplishment of a common purpose then the conspiracy may be found.").

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████

The majority of the evidence of the Southern Pines aspect of the conspiracy will come from the covert recordings made by the FBI undercover agents of Burnette, Maddox, and Carter-Smith.[3] ███████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████ Exhibit B to ECF No. 333 at 13-14.

_____

[3]     Of course, substantial evidence of the conspiracy will come from Burnette's own statements, which are not subject to a *James* hearing. ████████████████
███████████████████████████████████████████████████
████████████████████████

███████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

██████████████████████████████

████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

██ The government need not prove that the defendant took, or ever intended to take, the official action. The government must prove only that the defendant accepted a thing of value, intending to be influenced with regard to an official act. *See* Pattern Crim. Jury Instr. 11th Cir. OI O5.1 (2019) ("It is not necessary that the public official actually make a decision or take an action. It is enough that he/she agrees to do so. The agreement need not be explicit, and the public official need not specify the means he/she will use to perform his/her end of the bargain. Nor must the public official in fact intend to perform the official act, so long as he/she agrees

to do so.").  This is because "acceptance of the bribe is the violation of the statute, not performance of the illegal promise." *United States v. Brewster*, 408 U.S. 501, 526 (1972) (emphasis added).  ██████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████

The conspiracy among Burnette, Maddox, and Carter-Smith involved both the Hotel Vote Abstention and Southern Pines and the evidence of the conspiracy will consist of testimony from co-conspirators, other involved witnesses, documents, and recordings of each of the co-conspirators.  The evidence will be more than "ample"

and for that reason, this Court should exercise its discretion not to hold a pretrial *James* hearing.

**B.** **This Court should decline to hold a *James* hearing because the defendant selectively and misleadingly quotes Maddox's change of plea hearing to suggest that Maddox has denied that he conspired with Burnette.**

In further support of his Motion, Burnette falsely claims that Maddox "has denied that there was any such conspiracy with Burnette" and, in support, selectively and misleadingly quotes from Maddox's change of plea colloquy. ECF No. 333 at 10. He cites Maddox's out-of-context statement, "I don't think that what is in the statement of facts constitutes a crime," as support for the proposition that Maddox was denying that he conspired with Burnette. ECF No. 333 at 3; Exhibit A to ECF No. 333 at 11:25-12:5. This is not the case.

A review of the exchange between Maddox and this Court that followed this statement reveals that Maddox was stating that he felt there were defenses to the conspiracy charge as it related to individuals *other than Burnette*, but he admitted that the conduct related to Burnette *did constitute a crime*. *See* Exhibit A to ECF No. 333 at 12-14; 21-23; Exhibit B (Maddox Statement of Facts at ¶¶ 34-49). After Maddox made the statement quoted above, the Court explored the issue further to ensure that Maddox was, in fact, admitting that he had committed a crime. After all, the Court could not legally have taken his plea if he was not.

| THE COURT: | Let me walk back through that and make sure I understand what you just told me. First, if I have it right -- and I may not, that's why I'm asking -- if I understand the first thing you told me is this: Everything it says in the statement of facts is true, but there are additional facts that you think are relevant that are not set out in the statement of facts. |
|---|---|
| MADDOX: | Yes, sir. |
| THE COURT: | The next thing you said I'm not sure I understand. I think you told me you don't think you committed a crime. |
| MADDOX: | The things in the statement of facts are separate from the charges that I have pled to, the three charges that I pled to. They're separate cases completely relating to different counts in the original indictment; and, no, sir, I don't think what those are I committed a crime. I'm pleading to the three today, but I don't think some of them that are in the statement of facts that I committed a crime. |

Exhibit A to ECF No. 333 at 13.

The "things in the statement of facts [that] are separate from the charges that [Maddox] pled to" included facts unrelated to, for example, Count 23, the Honest Services Mail Fraud scheme involving Southern Pines. This exchange clarified that when Maddox said that there were facts in the statement of facts that he did not believe constituted a crime he was referring to facts *other than* those related to the Southern Pines scheme.

The Court specifically inquired of Maddox and Carter-Smith regarding the facts supporting Count 23, Honest Services Mail Fraud.

THE COURT:          . . . Count 23 is the FBI company that they set up to solicit a payment. So let me tell you what I think is involved in this, and then again I'm going to get you to straighten me out if I've got the facts wrong.

The FBI, acting undercover, purported to have a – I think it's a real estate development operation, and the proposal was that the company referred to in the papers as Company F, which is the front company for the FBI, was going to pay $10,000 a month. And if I understand it, Mr. Maddox, you met with a representative of Company F –

MADDOX:             Yes, sir.

THE COURT:          -- and indicated that you could provide favorable support in exchange for this $10,000 a month; and that Ms. Carter-Smith was on board; and that would be the way the money would be paid. Is that about it?

MADDOX:             Yes, sir.

THE COURT:          And, Ms. Carter-Smith, you knew about this operation?

CARTER-SMITH: Not initially, but then, yes, sir.

*Id*. at 22.  Those facts, which Maddox and Carter-Smith both stated constitute the crime of Honest Services Mail Fraud, repeatedly refer to Burnette's involvement in the bribery scheme.  *See* Exhibit B (Maddox Statement of Facts) at ¶¶ 34-49.  For example, the third paragraph of the statement of facts—signed by Maddox and Carter-Smith—specifically references Burnette's involvement in the criminal agreement:

> On September 21, 2016, BURNETTE met with a
> [Southern Pines] representative and other individuals.
> During this meeting, BURNETTE agreed to secure
> MADDOX's support for a potential project by [Southern
> Pines] in exchange for [Southern Pines] paying
> BURNETTE a percentage of the deal.

*Id*. at ¶ 34.  The statement of facts, which Maddox signed and admitted under oath

was true and constituted a crime, further states:

> At MADDOX's instruction, BURNETTE facilitated the
> flow of communication between [Southern Pines] and
> MADDOX as it pertained to [Southern Pines'] payments
> to Governance.

*Id*. at ¶ 39.  Maddox's admission to these facts and this crime is a far cry from

Maddox "den[ying] that there was any such conspiracy with Burnette."  ECF No.

333 at 2.[4]

Although Maddox did not plead to a conspiracy count, the facts to which he

admitted and which supported the specific count relating to Southern Pines establish

---

a criminal conspiracy by a preponderance of the evidence, the relevant standard for admission of any co-conspirator statements.



## <u>CONCLUSION</u>

The government respectfully requests the Court deny the defendant's motion in all respects.

Respectfully submitted on March 29, 2021

JASON R. COODY
Acting United States Attorney

*/s/ Stephen M. Kunz*
STEPHEN M. KUNZ
GARY K. MILLIGAN
ANDREW J. GROGAN
Assistant United States Attorneys
Florida Bar No. 322415
D.C Bar No. 484813
Florida Bar No. 85932
111 North Adams St., 4th Floor
Tallahassee, FL 32301
(850) 942-8430
stephen.kunz@usdoj.gov
gary.milligan@usdoj.gov
andrew.grogan@usdoj.gov

COREY R. AMUNDSON
Chief, Public Integrity Section

*/s/ Peter M. Nothstein*
PETER M. NOTHSTEIN
Deputy Chief
ROSALEEN T. O'GARA
Trial Attorney
Maryland Bar No. 0512140322
Arizona Bar No. 029512
Public Integrity Section
Criminal Division
1331 F Street NW
Washington, D.C. 20005
(202) 616-2464
(202) 514-2401
peter.nothstein@usdoj.gov
rosaleen.o'gara2@usdoj.gov

## **LOCAL RULE 7.1 CERTIFICATE**

I certify that this response does not exceed 8,000 words, per Microsoft Word's word count, which complies with the word limit requirements set forth in Local Rule 7.1(F).

*/s/ Peter M. Nothstein*
PETER M. NOTHSTEIN
Deputy Chief

## **CERTIFICATE OF SERVICE**

I certify that a copy of this document has been served to counsel for defendant John Thomas Burnette via email to their addresses of record on this 29th day of March, 2021.

*/s/ Peter M. Nothstein*
PETER M. NOTHSTEIN
Deputy Chief