IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

UNITED STATES OF AMERICA

v.                                          4:18CR76-RH

JOHN THOMAS BURNETTE.
_____/

## MOTION FOR JUDGMENT OF ACQUITTAL

Defendant, John Thomas Burnette ("Burnette"), pursuant to Federal Rule of Criminal Procedure 29(a), moves to request that this Court enter a judgment of acquittal for all of the offenses alleged against Burnette in the Second Superseding Indictment before submission of this case to the jury.  Specifically, Burnette moves for a judgment of acquittal on the following grounds:

(1) The evidence is insufficient to support a conviction against Burnette on all counts under Federal Rule of Criminal Procedure 29(a); and

(2) Evidence offered by the government has constructively amended and is in material variance from the Second Superseding Indictment in violation of Burnette's rights under the Fifth Amendment to the United States Constitution.

In support of his motion, Burnette states the following:

## LEGAL STANDARD

Pursuant to Rule 29(a) of the Federal Rules of Criminal Procedure:

> After the government closes its evidence or after the close of all the evidence, the court on the defendant's motion *must* enter a judgment of acquittal of any offense for which the evidence is *insufficient to sustain a conviction*. The court may on its own consider whether the evidence is insufficient to sustain a conviction. If the court denies a motion for a judgment of acquittal at the close of the government's evidence, the defendant may offer evidence without having reserved the right to do so.

(emphasis added).

## LEGAL ARGUMENT

### I.     Insufficient Evidence on All Counts

#### A. Count One

The Court's Draft August 5, 2021 Jury Instructions[1] (the "Jury Instructions")

provide in pertinent part:

> Mr. Burnette can be found guilty on count 1—the charge of conspiracy to engage in racketeering activity—only if all these facts have been proven beyond areasonable doubt:

| | |
|---|---|
| First: | Two or more people *agreed* to try to accomplish an unlawful plan—that is, a plan to participate in the affairs of an enterprise through a pattern of racketeering activity—as charged in the indictment; |
| Second: | Mr. Burnette *knowingly and willfully* joined in the plan; |
| Third: | When Mr. Burnette joined in the plan, he *specifically intended* either (a) to personally participate in committing at least two acts of racketeering activity, or (b) to participate in the enterprise's affairs, knowing that one or more other |

---

[1] The Court's Draft August 5, 2021 Jury Instructions are the most recent instructions in Burnette's possession at the time this motion was written.

members ofthe conspiracy would commit at least two acts of racketeering activity and intending to help them as part of a pattern of racketeering activity;

Fourth:     The unlawful plan involved or affected interstate commerce; and

Fifth:     The conspiracy continued on or after May 9, 2014.

(emphasis added).

    **1.  There is insufficient evidence to support that any of the alleged co-conspirators actually agreed to engage in a racketeering conspiracy.**

A Racketeer Influenced and Corrupt Organizations ("RICO") conspiracy requires an agreement between or among the alleged co-conspirators to engage in a pattern of racketeering. Yet, Paige Carter-Smith ("Carter-Smith") and Scott Maddox ("Maddox")—the Government's own cooperating witnesses who are seeking a motion for substantial assistance from the Government—provided testimony denying the existence of any agreement to conspire. Both Carter-Smith and Maddox acknowledged that they did not plead guilty to RICO. Trial Tr. vol. 6, 1012:10-19, July 20, 2021; Trial Tr. vol. 10, 2000:18-22, July 26, 2021. Carter-Smith specifically testified that she was never knowingly part of a scheme to defraud, and Maddox never admitted that he was knowingly part of a scheme to defraud but rather admitted that he believed the checks related to Southern Pines Development were for

legitimate lobbying purposes, as opposed to a scheme to defraud. Trial Tr. vol. 6, 1018:11-1019:18, July 20, 2021; Trial Tr. vol. 10, 1986:1-13, July 26, 2021.

In addition to there being insufficient evidence that Carter-Smith and Maddox specifically intended and agreed to enter a conspiracy with Burnette, there is also insufficient evidence that Burnette knowingly and with specific intent agreed to a conspiracy with Carter-Smith and Maddox based on his own testimony in Court. For instance, Burnette was not present for a number of relevant meetings, he lacked knowledge as to Carter-Smith and Maddox's interactions with the undercover agents, and he did not receive a burner phone from Carter-Smith when she bought burner phones for herself, Maddox, and others. The evidence demonstrates that there was no agreement or enterprise, and "[i]t is axiomatic that mere association, without more, cannot give rise to a conspiracy conviction." *See United States v. Young*, 39 F.3d 1561, 1566 (11th Cir. 1994). Here, Burnette's mere association with Carter-Smith and Maddox is insufficient evidence of an enterprise and any conspiracy.

Without specific intent to agree to a pattern of racketeering, there can be no conspiracy. The evidence directly refutes the existence of the alleged conspiracy.

## 2. There is also insufficient evidence of continuity to support a racketeering conspiracy.

A racketeering conspiracy requires an *ongoing* pattern of racketeering activity:

> The continuity element is "crucial to a valid RICO claim to ensure that the crime alleged is the sort of offense that RICO is designed to address—one that is part of a pattern of ongoing, continuing criminality or that involves criminality that promises to continue into the future." *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1265. Continuity of the racketeering activity is both a closed-and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition. *Id.* (citing *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 241-42 (1989)).

*Sterling Nat'l Mortg. Co. v. Infinite Title Sols., LLC*, No. 10-22147-CIV, 2011 WL 13220625, at *6 (S.D. Fla. Mar. 3, 2011), *report and recommendation adopted sub nom. Sterling Nat. Mortg. Co. v. Infinite Title Sols.,* LLC, No. 10-22147-CIV, 2011 WL 1222168 (S.D. Fla. Mar. 31, 2011).   Notably, "[t]he continuity requirement means that a RICO plaintiff cannot allege two isolated sporadic predicate acts."   *Id.* The Government has done just that by alleging isolated and sporadic acts: payment in the amount of $100,000 and in the amount of $40,000.   As a result, the Government has failed to demonstrate continuity at trial.

### B. Count Two

The Jury Instructions incorporate the Second Superseding Indictment by reference and provide in pertinent part:

Count 2 charges actual or attempted interference with commerce by extortion. Mr. Burnette can be found guilty of *actual* interference only if all these facts have been proved beyond a reasonable doubt:

First:        Mr. Burnette caused Southern Pines Development LLC to pay money directly or indirectly to Mr. Maddox;

Second:   Mr. Burnette did so *knowingly* by means of extortion, *as charged in the indictment*; and

Third:      The extortionate transaction delayed, interrupted, or affected interstate commerce.

(emphasis added).

The Jury Instructions also define extortion as "a public officer's receipt of money or anything else of value in exchange for an official act."

Importantly, Maddox—the public official at issue here—testified that he was *never* part of any plan to extort anybody. Trial Tr. vol. 10, 2014:7-14, July 26, 2021. There is no evidence that any payments of any value were ever made to Maddox under color of official right.

The Second Superseding Indictment requires an agreement for this count in that it alleges that Burnette "*together with Maddox and Carter-Smith*, did knowingly obstruct, delay, and affect commerce and the movement of articles and commodities in commerce, and did attempt to obstruct, delay, and affect commerce and the movement of articles and commodities in commerce, by extortion, as those terms are defined in Title 18, United States Code, Section 1951." (emphasis added).

6

For Count Two, there is insufficient evidence that Burnette *knowingly and together with Carter-Smith and Maddox* caused a payment to be made to Maddox. As discussed above, the Government has not met its burden of demonstrating that Burnette had an agreement with Carter-Smith and Maddox, let alone an agreement to extort. In this case, without such an agreement and without extortion involving Maddox, there is insufficient evidence to support a charge of extortion against Burnette.

### C. Counts Three Through Six

The Jury Instructions provide in pertinent part:

Mr. Burnette can be found guilty on one of these counts only if all these facts have been proven beyond a reasonable doubt:

| | |
|---|---|
| First: | Mr. Burnette knowingly devised or participated in a scheme to fraudulently deprive the public of the right to Mr. Maddox's honest services through bribery, as charged in the indictment; |
| Second: | Mr. Burnette did so with an intent to defraud the public of the right to Mr. Maddox's honest services; and |
| Third: | Mr. Burnette mailed or caused to be mailed some communication or item to carry out the scheme to defraud. |

…

To act with "intent to defraud" means to act knowingly and with the specific intent to use false or fraudulent pretenses to cause loss of honest services. Proving intent to deceive alone, without the intent to cause loss of honest services, is not sufficient to prove intent to defraud.

For Counts Three through Six, there is insufficient evidence that Burnette engaged in a scheme to defraud, much less with the specific intent to defraud as required for conviction.  Carter-Smith and Maddox did not admit to being part of a fraudulent scheme related to the checks in this count.  Trial Tr. vol. 4, 928:20-22, July 15, 2021; Trial Tr. vol. 10, 1986:1-1987:12, July 26, 2021.  To the contrary, Carter-Smith and Maddox believed that Governance was retained for legitimate lobbying *in Leon County*, as opposed to the City, for Fallschase, and *not* to influence Maddox.  Trial Tr. vol. 6, 1105:8-10, July 20, 2021; Trial Tr. vol. 10, 1986:1-1987:12, 1996:11-16, July 26, 2021.

Maddox expressed shock and anger at any statements Burnette made to suggest anything less than a legitimate transaction between Southern Pines Development and Carter-Smith.  Trial Tr. vol. 10, 1962:5-1964:2, July 26, 2021.  Carter-Smith testified that at the time of the alleged events, she continued to believe that her interactions with her client Southern Pines Development were solely in furtherance of her County lobbying efforts, as demonstrated by her actions at the time.  Trial Tr. vol. 4, 915:19-916:8, 934:11-935:9, July 15, 2021.  Because Carter-Smith, Maddox, and Burnette all testified that there was no fraudulent agreement, there is also no evidence that Burnette had any intent to defraud the public of the right to Maddox's honest services.  Specific to Counts Three and Four, there is no evidence that Burnette even had knowledge of the checks.

8

### D. Counts Seven and Eight

The Jury Instructions provide in pertinent part:

Mr. Burnette can be found guilty on one of these counts only if all of these facts have been proved beyond a reasonable doubt:

First:      Mr. Burnette used a cell phone with the specific intent to facilitate bribery, as charged in the count under consideration;

Second:   Thereafter, Mr. Burnette knowingly performed or attempted to perform an act to facilitate the bribery; and

Third:     The cell phone was present in the Northern District of Florida when it was used, or the phone was used to communicate with a phone that was present in the Northern District of Florida at that time, or an act thereafter performed to facilitate the bribery was performed in the Northern District of Florida.

The Jury Instructions also define a bribe as "a payment of anything of value, including money, to a public officer in exchange for the officer's performance of, or agreement to perform, an official act."

For Counts Seven and Eight, there is insufficient evidence that Burnette, Carter-Smith, or Maddox ever agreed to a bribe or any other unlawful activity, which is fatal to these counts. Without a bribe, there can be no facilitation of a bribe. There is simply no evidence that Burnette agreed to or facilitated a payment in exchange for Maddox's agreement to perform an official act.

In summary, Maddox testified that he never had a conversation with Burnette about anything involving Southern Pines where he said anything that he did was for sale or about wanting to get paid through Governance. Trial Tr. vol. 10, 1962:12-

15, 1963:16-20, July 26, 2021.  When Maddox listened to the recordings and calls between Burnette and the undercover agents, including this October 24, 2016 call, he was "shocked" and "upset" that Burnette was "selling falsehoods" and was "full of shit."  Trial Tr. vol. 10 1962:5-15, 1962:18-1963:2, 1964:2-1965:1, July 26, 2021.

For Count Seven, Burnette did not facilitate any unlawful activity during the October 19, 2016 telephone call with Mike Sweets ("Sweets").  Sweets initiated the call to Burnette, and Sweets alone referenced a payment.  (Gov. Ex. 36).  Burnette merely answered the phone.  Burnette did not make any statements in furtherance of a crime.  Moreover, based on the testimony of Carter-Smith, Maddox, and Burnette, there was *no crime* to further.

For Count Eight, Burnette must be acquitted for improper venue because there is insufficient evidence that the phone call took place in the Northern District of Florida as alleged.  Federal Rule of Criminal Procedure 18 provides in pertinent part:

> Unless a statute or these rules permit otherwise, the government must prosecute an offense in a district where the offense was committed.

*See also* 18 U.S.C. § 3232.  Burnette's counsel learned for the first time from Michael Miller's ("Miller") testimony that neither Miller nor Burnette were in the state of Florida at the time of this October 24, 2016 telephone call.  Trial Tr. vol. 7, 1249:25-1250:8, July 21, 2021; Trial Tr. vol. 8, 1549:20-22, July 22, 2021.

### E.  Count Nine

The Jury Instructions provide in pertinent part:

Mr. Burnette can be found guilty on this count only if all of these facts have been proved beyond a reasonable doubt:

| | |
|---|---|
| First: | Mr. Burnette made a statement listed in this count; |
| Second: | The statement was false; |
| Third: | The falsity concerned a material matter; |
| Fourth: | Mr. Burnette acted willfully, knowing that the statement  was false; and |
| Fifth: | The false statement was made on a matter within the jurisdiction of the executive branch of the United States government. |

There is insufficient evidence that Burnette knowingly and willfully made false statements as to material fact.  The making of a false statement is not a crime unless the falsity relates to a "material" fact.  A "material fact" is an important fact — not some unimportant or trivial detail— that has a natural tendency to influence or is capable of influencing a decision of a department or agency in reaching a required decision.  Burnette actually provided the FBI with truthful and material facts, including that Southern Pines Development retained Carter-Smith and the Las Vegas trip.

11

## II.    Constructive Amendment and Material Variance

The Fifth Amendment guarantees a defendant the right to be tried for only those offenses presented in an indictment returned by a grand jury.  The Government has made a constructive amendment to and material variances from the Second Superseding Indictment in violation of Burnette's Fifth Amendment rights.

### A. Constructive Amendment

A constructive amendment "occurs when the essential elements of the offense contained in the indictment are altered to broaden the possible bases for conviction beyond what is contained in the indictment."  *United States v. Madden*, 733 F.3d 1314, 1318 (11th Cir. 2013).

The Government changed the date of the conspiracy from December of 2013 in the Second Superseding Indictment to May/June of 2013—a date barred by the statute of limitations—in opening statements.  *See United States v. Young*, 39 F.3d 1561, 1567 (11th Cir. 1994) (providing that a variance between the dates alleged and the dates proved at trial could potentially trigger reversal if the date proved does not fall within the statute of limitations and before the date of the indictment).  Burnette was indicted on October 2, 2019, and trial did not begin until July 12, 2021.  The Government had ample opportunity over the course of *two years* to amend these dates by a third superseding indictment.  Yet, the Government elected to present its

amendment for the first time in a PowerPoint presentation used during opening statement at trial.  Consequently, Burnette is entitled to acquittal on Count One.

## B. Material Variance

"A 'variance' occurs when the evidence at trial establishes facts materially different from those alleged in the indictment" and functions as a challenge to the sufficiency of the evidence. *See United States v. Lander*, 668 F.3d 1289, 1295 (11th Cir. 2012).

The Government made at least three material variances from the Second Superseding Indictment.  First, the Government broadened the dates of the charges from December of 2013 to May/June of 2013.  Second, paragraph 25 and paragraph 32 of the Second Superseding Indictment connect Maddox's abstention on a specific vote to February 12, 2014, when Maddox actually recused himself on September 11, 2013, during introduction to the ordinance when there was *no* McKibbon Hotel Group item up for a vote.  Third, at trial, the Government first introduced evidence that the alleged $100,000 payment was in exchange for Carter-Smith not working for McKibbon Hotel Group, which was not included in the Second Superseding Indictment.

Most importantly, the evidence at trial refutes the Government's conspiracy theory.  Alleged co-conspirators Carter-Smith and Maddox denied the very existence of a conspiracy, of a fraudulent scheme, and of the requisite specific intent.  This is

analogous to *Lander*, where the Court reversed the denial of the defendant's motion for acquittal on a mail fraud count related to two separate fraudulent schemes on the grounds that the Government's evidence did not prove a scheme to defraud and that the there was a material variance from the indictment. 68 F.3d 1289, 1295 (11th Cir. 2012).

In *Lander*, the Government could not identify in the record where the evidence at trial supported the alleged misrepresentation under the mail fraud count, and witness testimony actually disproved such misrepresentation. *See id*. at 1296. The Court found that because specific intent to defraud, which requires proof of a material misrepresentation, is an essential element of mail fraud, there was a material variance from the indictment, and the defendant was substantially prejudiced as a result because a defendant is entitled to be informed of the charges against him and to not be surprised at trial by evidence offered against him. *See id*. at 1295-96. Like in *Lander*, witness testimony introduced in this trial also *disproved* the Government's allegations and materially varied from the Second Superseding Indictment, and as a result of these departures from the Second Superseding Indictment, Burnette has suffered substantial prejudice.

## CONCLUSION

Based on the foregoing, Burnette respectfully requests under Rule 29(a) of the Federal Rules of Criminal Procedure on the grounds that the Government's evidence

14

against Burnette is insufficient to support a conviction based upon proof beyond a reasonable doubt for all counts, and the Government's proof has constructively amended and materially varied from the Second Superseding Indictment in violation of the Fifth Amendment.  As a result, Burnette is entitled to acquittal.

Dated:  August 10, 2021                     Respectfully submitted,

                                            /s/ Gregory W. Kehoe
                                            Gregory W. Kehoe
                                            Florida Bar No. 0486140
                                            kehoeg@gtlaw.com
                                            Jordan L. Behlman
                                            Florida Bar No. 111359
                                            behlmanj@gtlaw.com
                                            Greenberg Traurig, P.A.
                                            101 East Kennedy Blvd., Suite 1900
                                            Tampa, FL 33602
                                            Telephone: (813) 318-5700
                                            Facsimile: (813) 318-5900

                                            R. Timothy Jansen
                                            Florida Bar No. 0691208
                                            jansen@jansenanddavis.com
                                            Jansen & Davis, P.A.
                                            125 N Franklin Blvd.
                                            Tallahassee, FL 32301
                                            Telephone: (850) 224-1440
                                            Facsimile: (850) 224-0381

                                            Adam Komisar
                                            Florida Bar No. 86047
                                            adam@komisarspicola.com
                                            PO Box 664
                                            Tallahassee, FL  32302
                                            Telephone: (850) 591-7466
                                            Facsimile: (850) 320-6592

Michael Ufferman
Florida Bar No. 114227
ufferman@uffermanlaw.com
Michael Ufferman Law Firm, P.A.
2022-1 Raymond Diehl Road
Tallahassee, FL  32308
Telephone:  (850) 368-2345
Facsimile: (850) 224-2340

*Counsel for Defendant John Thomas Burnette*

## <u>LOCAL RULE 7.1(F) CERTIFICATE</u>

I certify that this paper contains 3,122 words, per Microsoft Word's word count, which complies with the word limit requirements set forth in Local Rule 7.1(F).

/s/ Gregory W. Kehoe
Attorney

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a copy of this document has been served to counsel for the United States of America via email to their addresses of record on this 10th day of August, 2021.

/s/ Gregory W. Kehoe
Attorney