**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

UNITED STATES OF AMERICA

v.                                             CASE NO. 4:18-cr-00076-RH

JOHN THOMAS BURNETTE

        Defendants.

_____/

## JURY INSTRUCTIONS

Members of the Jury:

        It is now my duty to instruct you on the law that you must follow in deciding

the case. When I have finished you will go to the jury room and begin your

deliberations.

        I have written my instructions and will give you copies for reference during

your deliberations. You therefore don't need to take notes; please just pay close

attention as I go through the instructions with you. I'm going to start with general

instructions that apply in all criminal cases. Then I'll address the specific charges in this case. Then I'll conclude with general instructions on things like how you will return your verdict.

It will be your duty to decide whether the government has proved beyond a reasonable doubt that the defendant on trial, John Thomas Burnette, is guilty of the crimes charged in the indictment. You must make your decision based only on the evidence introduced during the trial. And you must not be influenced in any way by either sympathy or prejudice for or against Mr. Burnette or the government.

You must follow the law as I explain it to you whether you agree with the law or not. And you must follow all of the instructions as a whole. You may not single out, or disregard, any instruction.

The indictment is not evidence of guilt. Indeed, every defendant is presumed by the law to be innocent. The law does not require a defendant to prove his innocence or to produce any evidence at all. The government has the burden of proving a defendant guilty beyond a reasonable doubt, and if it fails to do so, you must find the defendant not guilty.

Thus the government's burden of proof is a strict or heavy burden. It is not necessary, however, that a defendant's guilt be proved beyond all possible doubt. It is only required that the government's proof exclude any "reasonable doubt" of the defendant's guilt.

A "reasonable doubt" is a real doubt, based on reason and common sense after careful and impartial consideration of all the evidence.

Proof beyond a reasonable doubt is proof of such a convincing character that you would be willing to rely and act on it without reservation in the most important of your own affairs. If you are convinced the defendant has been proved guilty beyond a reasonable doubt, say so. If you are not convinced, say so.

As I have said, you must decide the case based only on the evidence presented during the trial. The evidence consists of the testimony and exhibits. What the lawyers say is *not* evidence. It is your own recollection and interpretation of the evidence that controls, not theirs. Also, you should not infer from anything I have said or done that I have any opinion on the merits of the case favoring one side or the other.

As you consider the evidence, you may make deductions and reach conclusions based on reason and common sense. And you should not be concerned about whether the evidence is direct or circumstantial. "Direct evidence" is the testimony of a person who asserts actual knowledge of a fact, such as an eyewitness. "Circumstantial evidence" is proof of a chain of facts and circumstances tending to prove, or disprove, a fact in dispute. The law makes no distinction between the weight you may give to either direct or circumstantial evidence.

Now, in saying that you must *consider* all the evidence, I do not mean that you must *accept* all the evidence as true or accurate. You should decide whether you believe what a witness said and how important the testimony was. You may believe or disbelieve any witness, in whole or in part. Also, the number of witnesses testifying on a dispute is not controlling.

In determining the believability of a witness and the weight to be given the testimony, you may properly consider how the witness acted as well as what the witness said. Some things you should consider are:

(1) Did the witness have an adequate opportunity to see and know the things the witness testified about?

(2) Did the witness have a good memory?

(3) Was the witness honest and straightforward in answering the questions?

(4) Did the witness have an interest in the outcome of the case or any reason not to tell the truth?

(5) Did the witness's testimony seem reasonable, considered in the light of all the evidence and in the light of your own experience and common sense?

(6) Did the witness do or say something at some other time inconsistent with the testimony the witness gave before you during the trial?

The government called two witnesses who were themselves charged in this case, pled guilty, and agreed to cooperate with the government. Plea bargaining, as this is sometimes called, is lawful and proper, and is expressly provided for in the court's rules. The government also called a witness who was promised immunity from prosecution, and another who was promised that what he said, if truthful, would not be used against him. This, too, is lawful and proper. But a witness who obtains or hopes to obtain more favorable treatment in the witness's own case may have a reason to make a false statement. So while witnesses of these kinds may be entirely truthful when testifying, you should consider their testimony with more caution than the testimony of other witnesses.

That two witnesses pled guilty to charges against them does not mean Mr. Burnette is guilty of the charges against him. You must evaluate the charges against Mr. Burnette on their own merits based on the evidence presented in this trial.

When knowledge on a technical subject might help the jury, a person having special training or experience is allowed to state an opinion on the subject. But that does not mean you must accept the opinion. The same as with any other witness, it is up to you to decide whether to rely on the testimony.

A defendant has a right not to testify. But when a defendant does testify, you should decide in the same way as for any other witness whether you believe the defendant's testimony.

Now let me turn to the charges in this case. Each crime charged in an indictment is called a "count." This indictment includes nine counts. The first eight charge specific offenses involving bribery or extortion. The ninth count charges false statements. I will address the charges in detail in just a minute, setting out what the government must have proved to prevail on each count. First, though, let me explain the meaning of bribery and extortion, as those terms are used in this

case.

A "bribe" is a payment of anything of value, including money, to a public officer in exchange for the officer's performance of, or agreement to perform, an official act. The public officer need not actually perform an official act or even intend to do so; it is enough for the officer to *agree* to perform an official act, whether or not he actually intends to perform. The agreement can be formal or informal, explicit or merely understood, so long as there is in fact an agreement. The public official need not specify the means he will use to perform the official act. The public officer at issue in this case is Scott Maddox.

An "official act" is a decision or action that involves the formal exercise of governmental power. This case involves only three kinds of possible official acts. Unless you find there was an official act of one of these three kinds, you cannot find there was an official act.

The first is a vote on any matter that was pending or might later come before a local governmental entity, including the City Commission, the Community Redevelopment Agency, or the Planning Commission. To count as a matter that might later come before the governmental entity, a matter need not be identified at

the time of the payment; it is sufficient if the payment is made in exchange for favorable treatment on any not-yet-known matter that might later come up for a vote.

The second kind of official act is abstaining from a vote—that is, not voting—on the same kind of matter.

The third kind of official act is pressuring or advising another official, including another commissioner or a staff member, on the same kind of matter. But Mr. Maddox's advice to a commissioner or staff member was an official act only if Mr. Maddox knew or intended that the commissioner or staff member would take formal action based on that advice on a matter that could come before the local governmental entity. Talking to another commissioner or staff member or advocating a course of action, without more, is not an official act.

"Extortion" is the flip side of bribery. Extortion is a public officer's receipt of money or anything else of value in exchange for an official act. This constitutes extortion even if the officer does not use force, threats, or fear; it is enough that the officer uses his official position to cause a person to make the payment. And as with bribery, the officer need not actually perform an official act or intend to do so;

taking the payment is enough.

A payment to or agreement to pay an officer not involving a past, present, or possible future official act, known or unknown, is not bribery or extortion.

A person's payment to a private consultant or lobbyist to advocate for the person before a governmental body—or not to advocate for a different person—is not a bribe. This is so even if the consultant or lobbyist transfers some or all of the payment to a public officer—so long as the officer does not agree, in exchange for the payment, to perform an official act. But if the officer agrees to perform an official act in exchange for the payment, it is a bribe. And if a payment is made partly in exchange for an official act—that is, as a bribe—and partly for one or more other purposes, the payment is still a bribe.

Now let me turn to the specific counts, starting with count 1. This count charges conspiracy to engage in racketeering activity. Racketeering activity can include offenses of various kinds. In this case, the only offenses at issue are bribery or extortion or attempts to engage in bribery or extortion.

You will note that Mr. Burnette is not charged in this count with actually

engaging in racketeering activity; he is charged with having *conspired* to do so. A conspiracy is an agreement between two or more people to commit a crime—in this case, to engage in racketeering activity. An undercover agent cannot be a member of a conspiracy—the agreement must be between two or more *other* people.

The agreement can be formal or informal, explicit or merely understood, so long as there is in fact an agreement. The essence of a conspiracy is the agreement itself. Thus a person can be guilty of conspiracy even if the conspirators did not succeed in accomplishing the unlawful plan.

A conspiracy is, in effect, a partnership for criminal purposes. Every member of the conspiracy becomes the agent or partner of every other member. A person may be a member of a conspiracy without knowing all the details of the unlawful plan or the names and identities of all the conspirators. If a person has a general understanding of the unlawful purpose of a plan and willfully joins in the plan on one occasion, the person commits the crime of conspiracy, even if the person did not participate before and even if the person played only a minor part.

But mere presence at the scene of a transaction or event does not make a

person a conspirator. And the fact that people have associated with one another does not alone establish that there was a conspiracy. Also, a person who has no knowledge of a conspiracy, but who happens to act in a way that advances some purpose of one, is not a conspirator.

Mr. Burnette can be found guilty on count 1—the charge of conspiracy to engage in racketeering activity—only if all these facts have been proven beyond a reasonable doubt:

First:     Two or more people agreed to try to accomplish an unlawful plan—that is, a plan to participate in the affairs of an enterprise through a pattern of racketeering activity—as charged in the indictment;

Second:    Mr. Burnette knowingly and willfully joined in the plan;

Third:     When Mr. Burnette joined in the plan, he specifically intended either (a) to personally participate in committing at least two acts of racketeering activity, or (b) to participate in the enterprise's affairs, knowing that one or more other members of the conspiracy would commit at least two acts of racketeering activity and intending to help them as part of a pattern of racketeering activity;

Fourth:    The unlawful plan involved or affected interstate commerce; and

Fifth:     The conspiracy continued on or after May 9, 2014.

An "enterprise" is a group of people or entities associated for a common

purpose of engaging in a course of conduct. In this case, the common purpose must be engaging in a pattern racketeering activity. The association can be formal or informal, so long as it is in fact an association for the common purpose.

"Racketeering activity," for purposes of this case, means bribery or extortion, as I have defined those terms.

A "pattern of racketeering activity" means at least two acts of bribery or extortion—or attempts to commit bribery or extortion—within 10 years of one another. The acts of bribery or extortion must be connected to one another by a common scheme, plan, or motive; a series of separate, isolated, or disconnected acts is not a pattern.

"Interstate commerce" is the flow of business activities between any place in one state and any place outside the state. Conduct "affects" interstate commerce if, in natural and continuous sequence, the conduct causes an actual effect, positive or negative, on interstate commerce, in any way or to any degree. The government does not have to prove that Mr. Burnette *intended* to affect interstate commerce or that interstate commerce was actually affected; it is enough if the plan, if actually carried out, would have affected interstate commerce.

Count 2 charges actual or attempted interference with commerce by extortion. Mr. Burnette can be found guilty of *actual* interference only if all these facts have been proved beyond a reasonable doubt:

First:      Mr. Burnette caused Southern Pines Development LLC to pay money directly or indirectly to Mr. Maddox;

Second:   Mr. Burnette did so knowingly by means of extortion, as charged in the indictment; and

Third:     The extortionate transaction delayed, interrupted, or affected interstate commerce.

"Extortion" and "interstate commerce" have the same meanings I gave you earlier in these instructions.

Mr. Burnette can be found guilty of *attempting* to interfere with commerce by extortion only if all these facts have been proven beyond a reasonable doubt:

First:      Mr. Burnette intended to commit the offense of interference with commerce by extortion, as I just defined it; and

Second:   Mr. Burnette's intent was strongly corroborated by his taking a substantial step toward committing the crime.

A "substantial step" is an important action leading up to an offense—not just

an inconsequential act. It must be more than simply preparing. It must be an act

that would normally result in committing the offense.

Counts 3 through 6 charge honest services mail fraud. For this purpose,

"mail" includes deliveries by the United States Postal Service or a commercial

interstate carrier such as United Parcel Service or "UPS," regardless of whether the

delivery crosses state lines or occurs wholly within a single state. Mr. Burnette can

be found guilty on one of these counts only if all these facts have been proven

beyond a reasonable doubt:

> First:    Mr. Burnette knowingly devised or participated in a scheme to
> fraudulently deprive the public of the right to Mr. Maddox's
> honest services through bribery, as charged in the indictment;
>
> Second:   Mr. Burnette did so with an intent to defraud the public of the
> right to Mr. Maddox's honest services; and
>
> Third:    Mr. Burnette mailed or caused to be mailed some
> communication or item to carry out the scheme to defraud.

A "scheme" is any plan or course of action intended to deceive or cheat

someone.

To "deprive the public" of the right to an officer's "honest services" is to use

bribery to cause the officer not to honestly perform his official duties. Paying a

bribe may deprive the public of the bribed officer's honest services, even if the officer does not actually take an agreed action and does not perform differently than the officer would have performed in the absence of the bribe. This may be true even if the officer's employer—here the City of Tallahassee—does not suffer a monetary loss. But if there is no bribe, merely paying an officer or causing an officer to participate in a matter on which the officer has a conflict of interest does not deprive the public of the right to honest services, within the meaning of this count.

To act with "intent to defraud" means to act knowingly and with the specific intent to use false or fraudulent pretenses to cause loss of honest services. Proving intent to deceive alone, without the intent to cause loss of honest services, is not sufficient to prove intent to defraud.

The government does not have to prove all the details alleged in the indictment about the precise nature and purpose of the scheme. The government does not have to prove the mailed item was itself false or fraudulent or that using the mail was intended as the specific or exclusive way to carry out the alleged scheme. The government does not have to prove that the scheme actually succeeded in defrauding anyone.

To "cause" the mail to be used is to do an act knowing that the use of the mail will follow in the ordinary course of business or when that use can reasonably be expected to follow.

Each separate use of the mail as a part of a scheme is a separate crime. Mr. Burnette is charged in this indictment with four counts of honest services mail fraud based on four different alleged mailings.

Counts 7 and 8 charge using a facility of interstate commerce to facilitate unlawful activity. A cell phone is a facility of interstate commerce—the only such facility charged in these counts. Bribery is an unlawful activity—the only such activity charged in these counts. Mr. Burnette can be found guilty on one of these counts only if all of these facts have been proved beyond a reasonable doubt:

First: Mr. Burnette used a cell phone with the specific intent to facilitate bribery, as charged in the count under consideration;

Second: Thereafter, Mr. Burnette knowingly performed or attempted to perform an act to facilitate the bribery; and

Third: The cell phone was present in the Northern District of Florida when it was used, or the phone was used to communicate with a phone that was present in the Northern District of Florida at that time, or an act thereafter performed to facilitate the bribery was performed in the Northern District of Florida.

To "facilitate" means to make easy or less difficult.

The Northern District of Florida includes 23 counties from Alachua to Escambia, with Leon County roughly in the middle.

Count 9 charges making specific false statements to agents of the Federal Bureau of Investigation. Mr. Burnette can be found guilty on this count only if all of these facts have been proved beyond a reasonable doubt:

| | |
|---|---|
| First: | Mr. Burnette made a statement listed in this count; |
| Second: | The statement was false; |
| Third: | The falsity concerned a material matter; |
| Fourth: | Mr. Burnette acted willfully, knowing that the statement was false; and |
| Fifth: | The false statement was made on a matter within the jurisdiction of the executive branch of the United States government. |

A statement is "false" if it is untrue when made and the person making it knows it is untrue. The government does not have to show that a government agency was, in fact, deceived or misled.

A "material fact" is an important fact—not some unimportant or trivial detail. The fact must have a natural tendency to influence, or be capable of influencing, a decision of a department or agency.

The indictment lists five allegedly false statements. Any one of these could be enough to support a guilty verdict on this count, but you must all agree on the same one; it would not be sufficient for some of you to find Mr. Burnette guilty based on one of the statements while others find him guilty based only a different statement.

The Federal Bureau of Investigation is in the executive branch of the United States government and has jurisdiction to investigate crimes of the kind charged in this indictment.

That concludes my discussion of the specific counts. Now let me turn to two general principles of criminal law under which a defendant may be responsible for an act that is actually carried out not by the defendant but by someone else. The first of these two general principles is the concept of directing another person or aiding and abetting another person. The law recognizes that, ordinarily, anything a

person can do for one's self may also be accomplished by directing another person as an agent, or by acting together with, or under the direction of, another person in a joint effort.

So if a defendant directs another person to act, or if a defendant aids and abets another person by willfully joining together with the person in the commission of a crime, then the law holds the defendant responsible for the act of the other person just as though the defendant had personally performed the act.

But before a defendant can be held criminally responsible for the act of another, the defendant must willfully associate in some way with the crime and willfully participate in it. Mere presence at the scene of a crime and even knowledge that a crime is being committed are not sufficient to establish that a defendant either directed or aided and abetted the crime. You must find beyond a reasonable doubt that the defendant was a willful participant and not merely a knowing spectator.

The second general principle dealing with the circumstances under which a defendant may be responsible for an act actually carried out by someone else applies to conspiracies. A conspirator is responsible under the law for a crime

committed by another member of the conspiracy during the course of the

conspiracy and to further its objects. So in this case, if you have first found Mr.

Burnette guilty of the conspiracy offense charged in count 1, you may also find

Mr. Burnette guilty on any of counts 2 through 8, even if he did not personally do

the acts involved in those counts, if you find beyond a reasonable doubt all of these

facts:

> First:      The crime charged in the count under consideration was
>             committed by a conspirator during the existence of the
>             conspiracy and to further its objects;
>
> Second:   Mr. Burnette was a knowing and willful member of the
>             conspiracy at the time of the crime; and
>
> Third:     The commission of the crime by a conspirator was a reasonably
>             foreseeable consequence of the conspiracy.

Now some definitions that apply to all the counts.

An act is done "knowingly" if it is done voluntarily and intentionally and not

because of mistake or accident. An act is done "willfully" if it is done voluntarily

and purposely, with the intent to do something the law forbids, that is, with bad

purpose either to disobey or disregard the law. The person need not be aware of the

specific law or rule that is being violated.

The indictment charges that the crimes were committed "on or about" specified dates or during a period starting and ending "on or about" specified dates. The government does not have to prove with certainty the exact date of a crime. It is sufficient if the government proves beyond a reasonable doubt that the crime was committed on a date or during a period reasonably near the date or period alleged.

Now finally, some concluding general instructions.

As I have told you before, you must make your decision based only on the evidence presented during the trial. And I emphasize that you are here to determine whether the government has proved beyond a reasonable doubt that Mr. Burnette is guilty of the specific crimes charged in the indictment. You are not here to determine any other issue.

In that respect, you may have noticed that I have not said anything to this point about how the government conducted the investigation that led to this indictment. I have not discussed this because how the government conducted the investigation is not an issue you will be called on to address. The government is allowed to use undercover agents to investigate possible criminal activity and to

provide individuals an opportunity to commit crimes of a kind they may already be inclined to commit. Doing so is not improper, and whether or not you approve of how the government conducted this investigation, you cannot return a verdict for Mr. Burnette on that basis. You must instead apply the standards I gave you when I was discussing the charges a few minutes ago.

You must consider each count individually. Your verdict on any one count will not determine your verdict on any other count.

You should not consider the question of punishment in any way. If a defendant is convicted, the punishment is for the judge alone to determine, later.

Any verdict, whether guilty or not guilty, must be unanimous. In other words, to return a verdict you must all agree. Your deliberations will be secret. You will never have to explain your verdict to anyone.

It is your duty as jurors to discuss the case with one another in an effort to reach agreement if you can do so. Each of you must decide the case for yourself, but only after full consideration of the evidence with the other jurors. While you are discussing the case do not hesitate to reexamine your own opinion and change

your mind if you become convinced that you were wrong. But do not give up your honest beliefs just because the others think differently or merely to get the case over with.

Remember that in a real way you are judges—judges of the facts. Your only interest is to seek the truth from the evidence.

When you go to the jury room you should first select a foreperson. The foreperson will preside over your deliberations and will speak for you here in the courtroom.

A verdict form has been prepared for your use. [Explanation of verdict form.] You will have in the jury room the exhibits, a copy of the indictment, 12 copies of the verdict form, and 12 copies of these instructions. When you reach unanimous agreement, your foreperson will fill in the one original verdict form, date and sign it, and tell the court security officer you have reached a verdict. Do not give the verdict form to the court security officer. Your foreperson will carry the verdict form when you are brought back into the courtroom, and the verdict will be announced in open court. None of you should bring back into the courtroom another copy of the verdict form—the other copies are provided for

your convenience, but they should not be filled out and signed or brought back into the courtroom.

I am the only person who can give you instructions or explain anything about the law, the schedule, or procedures from this point forward. If you have questions or wish to communicate with me at any time, please write down your message or question and give it to the court security officer. The officer will bring it to me, and I will respond as soon as possible, either in writing or by having you returned to the courtroom so that I can address you orally. In any message or question you send, you should *not* tell me your numerical division at the time.