**IN THE UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**

**UNITED STATES OF AMERICA**

**v.**                                                    **Case No. 4:18cr76-RH/EMT**

**JOHN THOMAS BURNETTE,**

      **Defendant.**

_____/

## GOVERNMENT'S RESPONSE TO
## DEFENDANT'S MOTION FOR ACQUITTAL

At the close of evidence, Defendant filed a written motion for judgment of acquittal. ECF 431. The Court denied the motion in part as to evidentiary sufficiency challenges to Counts 2 through 9. Regarding Count 1, Defendant contends both that the government presented insufficient evidence to establish the continuity of the racketeering activity and that there were constructive amendments to, and material variances from, the allegations in the second superseding indictment. The Court took the challenges to Count 1 under advisement. The Court should deny the balance of Defendant's motion because there is sufficient evidence to establish continuity and there was no constructive amendment to, or material variance from, the second superseding indictment.

### I.    There is sufficient evidence to establish continuity.

Under 18 U.S.C. § 1962(d) it is unlawful to conspire to participate in the

conduct of an enterprise's affairs through a pattern of racketeering activity. "Racketeering activity," for purposes of this case, means bribery and extortion. *Id.* §1961(1). A "pattern of racketeering activity" requires "at least" two acts of racketeering activity occurring within ten years of each other. *Id.* §1961(5). To establish a pattern of racketeering activity in a criminal case, the government must show both continuity and a relationship between the predicates; that is, that the predicates constitute or threaten long-term criminal activity. *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 230 (1989).

"Continuity of racketeering activity may be proven 'in a variety of ways,' 'depend[ing] on the specific facts of each case.'" *United States v. Browne*, 505 F.3d 1229, 1259 (11th Cir. 2007) (quoting *H.J. Inc.*, 492 U.S. at 241-42 throughout, which are subsequently omitted). "Continuity is both a closed and open–ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *Id.* "A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time." *Id*. Predicate acts "extending over a few weeks or months and threatening no future criminal conduct" do not suffice. *Id.*

By contrast, the "open-ended" theory of continuity relies on the "threat of continuity" extending into the future, not on a closed set of repeated prior acts

committed over a substantial period of time. The burden under this theory can be met by proof that (1) the "racketeering acts themselves include a specific threat of repetition extending indefinitely into the future," or (2) the predicate offenses are "part of an ongoing entity's regular way of doing business," including where "the predicates can be attributed to a defendant operating as part of a long-term association that exists for criminal purposes." *Id.* at 1259-1260. An instruction that the predicate offenses committed must be "connected with each other by some common scheme, plan or motive so as to be a pattern of criminal activity and not merely a series of separate or isolated or disconnected acts" is sufficient to advise the jury of the continuity requirement. *United States v. Kotvas*, 941 F.2d 1141, 1145 (11th Cir. 1991). The requisite continuity is not defeated merely because there is a gap or interruption in the racketeering activities of an enterprise. *See United States v. Church*, 955 F.3d 688, 697-700 (11th Cir. 1992) (holding that an association-in-fact enterprise functioned as a continuing unit from 1973 to 1986, even though there was a three-year gap in the commission of racketeering acts from 1980 to 1983).

The government's evidence at trial established that predicate acts of bribery and extortion regarding the $100,000 bribe for the hotel vote abstention and the four separate $10,000 bribes from the undercover FBI agents operating as Southern Pines are connected by a common scheme, plan, and motive. Both the hotel abstention bribe by Defendant and Defendant's facilitation of the four bribes from Southern

Pines have the same purpose; to enrich Scott Maddox and obtain favorable action for Defendant's business interests before the City of Tallahassee. They had, or would have had, the same result. They have the same participants: Maddox as the receiver of the thing of value in exchange for official acts; Carter-Smith as cover for the bribe and partial beneficiary; and Defendant as a private beneficiary of the official action and payor or facilitator of the payments. Maddox and Carter-Smith were admittedly engaged in similar racketeering acts regarding a ride share company in 2015—between the hotel abstention bribe and the Southern Pines bribes. The predicate acts each have the same method: payments made to Governance/Carter-Smith under the guise of legitimate consulting services funneled to Maddox. Any gap in Defendant's participation is explained by the specific facts of the case; Defendant's business model of bribery is to only pay (or have someone else pay) when needed to "buy the equipment" depending on the weight of the "lift." Likewise, Defendant was able to facilitate the Southern Pines bribes because he had bribed Maddox in the past. Defendant knew he could facilitate those bribes for the same reason.

The government's evidence, therefore, shows a series of related criminal acts over a substantial period of time between 2013 and 2017. It also shows a threat of bribes in the future had Southern Pines been an actual real estate developer and had the investigation and charges not interrupted the criminal enterprise. This was

Maddox and Carter-Smith's regular way of doing business that Defendant agreed to participate in as his needs arose.  It was "a long-term association that exists for criminal purposes." *See Browne*, 505 F.3d at 1260. Indeed, the evidence shows that Defendant facilitated bribes to Maddox and then extorted continued payments for Maddox's favorable action on several projects that might take years to come to completion, with Maddox available to "push it over the finish line." Here the jury could find the requisite continuity under both the closed period and open-ended theories.

Defendant contends "[a] racketeering conspiracy requires an *ongoing* pattern of racketeering activity." ECF 431 at 5. Defendant relies on *Jackson v. BellSouth Telecommunications*, 372 F.3d 1250, 1264 (11th Cir. 2004), in support. But that case properly notes that "RICO targets *ongoing* <u>criminal</u> activity, rather than sporadic, isolated criminal acts . . . ." *Id.* at 1265 (underline emphasis added). And it properly notes that the requisite "ongoing" criminal activity refers to the continuity requirement described above.

## II.    There is no constructive amendment to the second superseding indictment.

Defendant also contends that the government constructively amended the second superseding indictment by suggesting in the opening statement that the conspiracy began in May or June 2013— "a date barred by the statute of limitations" —rather than December 2013. ECF 431 at 12. That is not correct. As

reflected in the Court's jury instructions, the statute of limitations requires that the jury find that the conspiracy continued on or after May 9, 2014. As it concerns the limitations statute, whether the conspiracy began in May/June 2013 versus December 2013 makes no difference.

### III.   There is no material variance from the second superseding indictment.

"A variance occurs where the facts proved at trial deviate from the facts contained in the indictment." *See United States v. Young*, 39 F.3d 1561, 1566 (11th Cir. 1994). A conviction will not be reversed on appeal unless the variance is material and substantially prejudices the defendant. *Id.*

Defendant contends that there were four material variances between the second superseding indictment and the proof at trial.[1] The second and third may be summarily disposed of. Defendant says that the indictment alleges an abstention on a specific February 12, 2014, vote but that the evidence shows that "Maddox actually recused himself on September 11, 2013." ECF 413 at 13. This is not so. Maddox announced that he would not be voting on the MHG project at the September 11, 2013, meeting, where there was no vote related to MHG. Maddox

---

[1] The fourth is an assertion that testimony from Maddox and Carter-Smith disproved the allegations and that this was a material variance. ECF 431 at 13-14. This is functionally the same as the sufficiency of evidence challenges which the Court has rejected. *See* TT at 3018-3020 (explaining that the government "is not bound by what Mr. Maddox said"); TT at 3036; *see also United States v. Lander*, 668 F.3d 1289, 1295 (11th Cir. 2012) (explaining that "an allegation of a variance [is] in essence one form of challenge to the sufficiency of the evidence").

formally recused himself from the February 12, 2014, vote by orally declaring same and then filed the required form documenting the recusal and the stated reasons for it. Testimony from the former City Attorney established that a public official generally declares a conflict and files the conflict form for each vote, not a single form for every vote on a particular matter. Trial Transcript ("TT") at 632. This is no variance from the indictment.

Defendant also contends that the government "introduced evidence that the alleged $100,000 payment was in exchange for Carter-Smith not working for [MHG], which was not included in the Second Superseding Indictment." ECF 431 at 13. The indictment alleges that Defendant and Maddox agreed that Defendant would cause KaiserKane to pay Governance $100,000 in exchange for Maddox's recusal from any vote regarding extending MHG's option agreement. ECF 145 at 9 ¶25. An agreement simply for Carter-Smith to not represent MHG in exchange for other business is not a bribe, and therefore was not alleged in the indictment. The proof at trial was that the deal between Defendant and Maddox was that Maddox would not vote in favor of MHG *and* Carter-Smith would not represent MHG in exchange for $100,000 in other business for Carter-Smith. TT at 879-881, 1917-1920. This is entirely consistent with the indictment.

Defendant's next argument that the government caused a material variance by broadening the dates of the charges from in or about December 2013 to May/June

2013 should also be rejected. ECF 431 at 13. An allegation that an offense occurred "on or about" a certain date is sufficient to put the defendant "on notice that the charge is not limited to the specific date or dates set out in the indictment." *United States v. Reed*, 887 F.2d 1398, 1403 (11th Cir. 1989) (affirming despite a month variance between the indictment's allegations and the trial evidence). Proof of a date "reasonably near the specified date is sufficient." *Id.*

"A variance between the dates alleged and the dates proved at trial generally will not trigger reversal provided that the date proved falls within the statute of limitations and before the dates of the indictment." *United States v. Young*, 39 F.3d 1561, 1567 (11th Cir. 1994). This is so because the time allegation is not material unless it is an essential element of the offense. *See Reed*, 887 F.2d at 1403.

The evidence at trial established that Defendant offered Maddox a bribe not to support MHG, at the earliest, in late May 2013—approximately six months before the December 2013 date in the indictment.  Even this gap, however, would not constitute a material variance, as courts have found that even longer gaps between an allegation and the evidence do not constitute a material variance. *See, e.g.*, *United States v. Roberts*, 308 F.3d 1147, 11th Cir. 2002) (holding that indictment alleging crime occurred on October 3, 2001, and proof that crime occurred October 3, 2000, was not a material variance even though the government conceded the allegation date was not reasonably near the proof date); *United States v. Harrell*, 737 F.2d 971,

981 (11th Cir. 1984) (affirming where indictment charged "in or about February 1980" and proof was summer of 1980 at the earliest); *Russell v. United States*, 429 F.2d 237, 238 (5th Cir. 1970) (affirming over a year difference in dates); see also *United States v. Knowlton*, 993 F.3d 354, 359 (5th Cir. 2021) (relying on *Russell* and other cases and explaining "[w]e have previously found that temporal variances of up to twelve months were not material").

The requirement that the indictment and the proof at trial match up ensures the defendant has proper notice of the charge and protects against double jeopardy. *Roberts*, 308 F.3d at 1568. Defendant does not assert the latter concern. Regarding the former, Defendant had proper notice of the charge in the indictment, knew the testimony that Maddox and Carter-Smith might offer at trial that the agreement may have been reached as early as May/June 2013, repeatedly sought to hold the witnesses to that date, and assembled evidence to meet it.

Prejudice is shown where "the proof at trial differed so greatly from the charges that [the defendant] was unfairly surprised and was unable to prepare an adequate defense." See *United States v. Calderon*, 127 F.3d 1314, 1328 (11th Cir. 1997). Here, Defendant has suffered no prejudice; he has been aware for at least two months of the need to meet the government's evidence on this point.

For example, on May 20, 2021, the government interviewed Carter-Smith in preparation for this trial. During the interview, Carter-Smith stated that she was

9

trying to do less work before the City because of her relationship with Maddox and that Maddox told her that Defendant did not want her to be involved with MHG. Carter-Smith stated she was not sure if her conversation with Maddox happened before a consulting agreement between the Zachary Group and MHG was executed on June 7, 2013, but believed she got off the MHG project around this time period. Carter-Smith confirmed in the same interview that a conversation with Maddox whereby she was instructed not to represent MHG occurred between May 30, 2013, and June 7, 2013. The government promptly disclosed a report of this interview to the defense.

During its opening statement, the government showed a demonstrative indicating that the agreement between Defendant and Maddox relating to MHG occurred in May or June 2013. In its opening, the defense stated that Maddox's recusal was prompted by attacks from Dr. Erwin Jackson on May 23, 2013, and that neither Maddox nor Carter-Smith gave the May/June 2013 date in their initial proffers. TT at 106.

During the presentation of evidence, the defense actively sought to establish the facts that they now claim are prejudicial—that the bribe offer from Defendant occurred in May or June 2013. The defendant also introduced evidence to attempt to rebut this claim, suggesting that Maddox's recusal was prompted by attacks from Jackson on May 22, 2013 and to counter the May/June 2013 date with evidence that

Defendant had no reason to bribe Maddox to kill the MHG project in May/June 2013.

First, Defendant presented evidence of Jackson attacking Maddox on matters other than MHG on May 22, 2013 during the testimony of former City Attorney Shelley and Carter-Smith. TT at 643-644; Def. Ex. 929, 930; TT at 1041-1046.

Second, defense counsel tried to get Carter-Smith to agree that the conversation between Carter-Smith and Maddox to not represent MHG happened between May 30 and June 7, 2013. TT at 1047-1048. When asked, Carter-Smith said she did not remember the exact timing. TT at 1048. Defense counsel refreshed her recollection with the FBI report described above. TT at 1048-1049. The following exchange ensued:

> Q. Now, does that refresh your recollection that you did, in fact, tell the government that after the proposal on May the 30th but before the consulting agreement on June 6th, you had a conversation with Mr. Maddox in which you were told by Mr. Maddox, when you were told by Mr. Maddox, not to represent the McKibbon Hotel Group?
>
> A. In so many -- yes, in so many words. I think the conversation was more in line with there would be something else to keep me busy.
>
> Q. I'm sorry?
>
> A. There would be something else to keep me busy.
>
> Q. So the conversation between May the 30th and June the 7th was: Don't represent the McKibbon Hotel Group, and Mr. Burnette will give you things to keep you busy; is that right?
>
> A. Basically; yes, sir.

11

TT at 1050.

In short, Carter Smith did not testify during trial with any certainty as to when she learned that the agreement also included Maddox formally recusing from the MHG vote.

When asked on direct examination, Maddox stated he did not remember the exact timing of the conversation with Defendant about recusing himself from MHG and Carter-Smith not representing MHG in exchange for $100,000; whether it was before or after he announced he would recuse on September 11, 2013. TT at 1920. Maddox agreed he had previously told the government it was before that September meeting and "that's my best recollection." *Id.* On direct examination, Maddox said he thought the conversation happened before June 7, 2013, but was uncertain. TT at 1923. On cross examination, defense counsel again pressed Maddox to say that the "alleged agreement" with Defendant took place before June 7, 2013. TT at 2020-2021. Maddox replied "I don't recall when the conversation happened." TT at 2021.

Third, having pushed hard with the left hand to have Maddox and Carter-Smith commit to a May/June 2013 date, Defendant has tried mightily with the right to undermine such a possibility. Defendant testified that he knew Maddox would recuse on MHG as far back as August 2012. TT at 2168 ("I know Scott Maddox is a nonissue related to McKibbon way back in 2012."). Defendant also testified that because he was trying to sell the Hotel Duval and feared the inclusion of a non-

compete clause until July 26, 2013, he did not know whether he could buy the Doubletree hotel. He testified that he thought as of July 22, 2013, that the Doubletree was "a pretty hard no," and the Duval buyers were not fully obligated until August 2, 2013. TT at 2192, 2201. Defendant said during this period he *favored* MHG and a Hampton Inn because Hampton guests would frequent the Hotel Duval rooftop bar, meeting space, and restaurant, and the Hampton parking garage would provide parking for Defendant's Gateway project. TT at 2193-2194. Defendant said he changed his mind when he realized on August 6 that he could sue the City to block MHG for years (whether the suit had merit or not) and then decided to use this leverage to try to buy the Doubletree. TT at 2195. Defendant said that he watched an April 2013 Commission meeting on the MHG project around August 20, 2013, saw Maddox absent himself, and deduced that Maddox would be conflicted out. TT at 2205-2207.

Defendant was clearly not surprised by the testimony that the bribe agreement occurred as early as May 2013 and was quite capable of mounting an adequate defense. As it relates to MHG, the apparent defense theory is that there was no agreement between Defendant and Maddox for the former's recusal from the MHG vote. To support this theory, the defense has sought to place such an agreement in May/June 2013 and to rebut the evidence of such an agreement with evidence that Defendant had no reason to make such an agreement at that particular

time. The defense argued as much extensively in closing. TT at 3196 to 3203.

Accordingly, this Court should deny the balance of Defendant's motion

for judgment of acquittal.

Respectfully submitted on August 12, 2021,

JASON R. COODY
Acting United States Attorney

*/s/ Stephen M. Kunz*
STEPHEN M. KUNZ
ANDREW J. GROGAN
Assistant United States Attorneys
Florida Bar No. 322415
Florida Bar No. 85932
111 North Adams St., 4th Floor
Tallahassee, FL 32301
(850) 942-8430
stephen.kunz@usdoj.gov
andrew.grogan@usdoj.gov

COREY R. AMUNDSON
Chief
Public Integrity Section

*/s/ Peter M. Nothstein*
PETER M. NOTHSTEIN
Deputy Chief
Maryland Bar No. 0512140322
ROSALEEN T. O'GARA
Trial Attorney
Arizona Bar No. 029512
Public Integrity Section
Criminal Division
1331 F Street NW
Washington, D.C. 20005
(202) 514-2401
rosaleen.o'gara2@usdoj.gov
peter.nothstein@usdoj.gov

## LOCAL RULE 7.1(F) CERTIFICATE

I certify that, in accordance with NDFL Local Rule 7.1(F), this paper does

not exceed 8,000 words.

*/s/Andrew J. Grogan*
Andrew J. Grogan
Assistant United States Attorney

14