# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
### TALLAHASEE DIVISION

UNITED STATES OF AMERICA,

v.                                                                    4:18-CR-76 (RH)

JOHN THOMAS BURNETTE,

    Defendant.

## DEFENDANT'S MOTION FOR
## CONTINUED RELEASE PENDING APPEAL

Gregory W. Kehoe
Florida Bar No. 0486140
kehoeg@gtlaw.com
Jordan L. Behlman
Florida Bar No. 111359
behlmanj@gtlaw.com
Kayli Danielle Smendec
Florida Bar No. 1018202
smendeck@gtlaw.com
Greenberg Traurig, P.A.
101 East Kennedy Blvd., Suite 1900
Tampa, FL 33602
Telephone: (813) 318-5700

R. Timothy Jansen
Florida Bar No. 0691208
jansen@jansenanddavis.com
Jansen & Davis, P.A.
125 N Franklin Blvd.
Tallahassee, FL 32301
Telephone: (850) 224-1440

Amy Mason Saharia (pro hac vice)
asaharia@wc.com
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Telephone: (202) 434-5900

Adam Komisar
Florida Bar No. 86047
adam@komisarspicola.com
PO Box 664
Tallahassee, FL  32302
Telephone: (850) 591-7466

Michael Ufferman
Florida Bar No. 114227
ufferman@uffermanlaw.com
Michael Ufferman Law Firm, P.A.
2022-1 Raymond Diehl Road
Tallahassee, FL  32308
Telephone: (850) 368-2345

*Counsel for John Thomas Burnette*

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................1

ARGUMENT ........................................................................................2

I.  Burnette Is Not Likely To Flee or Pose a Danger to Safety If Released.............2

II. The Appeal Raises Substantial Questions Likely To Result in a New Trial or
    Sentence Shorter than the Length of the Appellate Process.................................3

    A. The Jury Instructions Conflicted with Binding Precedent and Require a
       New Trial on Four Counts.........................................................................3

        1. *Specific matter* .....................................................................................5

        2. *Defining "matter"* ...............................................................................7

        3. *It is reasonably probable that these errors affected the trial's
           outcome, and they impugn the fairness of the proceedings.* ..............10

    B. The Court's Erroneous Admission of FBI Agent Testimony Opining on
       Burnette's Truthfulness Requires a New Trial on All Counts. ...............16

        1. *Agent Sweet repeatedly opined on Burnette's truthfulness.*...............16

        2. *The Court's admission of Sweet's opinion testimony was
           improper and will likely require a new trial on all counts.* ...............20

CONCLUSION ......................................................................................26

# TABLE OF AUTHORITIES

Page

## CASES

*Brown v. Dugger*, 831 F.2d 1547 (11th Cir. 1987)....................................................25

*Chase Manhattan Bank v. Rood*, 698 F.2d 435 (11th Cir. 1983) ...........................25

*McDonnell v. United States*, 136 S. Ct. 2355 (2016) ......................................*passim*

*Skilling v. United States*, 561 U.S. 358 (2010) ...........................................................4

*United States v. Eyster*, 948 F.2d 1196 (11th Cir.1991)...........................................22

*United States v. Giancola*, 754 F.2d 898 (11th Cir. 1985) .......................2, 3, 10, 24

*United States v. Henderson*, 409 F.3d 1293 (11th Cir. 2005) .................................22

*United States v. Hipps*, 857 F. App'x 1002 (11th Cir. 2021) ............................21, 24

*United States v. Madden*, 733 F.3d 1314 (11th Cir. 2013)................................10, 14

*United States v. Mayweather*, 991 F.3d 1163 (2021) .......................................4, 8, 9

*United States v. Olano*, 507 U.S. 725 (1993) ..........................................................10

*United States v. Roberson*, 998 F.3d 1237 (11th Cir. 2021)...........................*passim*

*United States v. Sanchez-Lima*, 161 F.3d 545 (9th Cir. 1998) ...............................21

*United States v. Schmitz*, 634 F.3d 1247 (11th Cir. 2011)...............................20, 21

*United States v. Silver*, 948 F.3d 538 (2d Cir. 2020).............................................6, 7

*United States v. Van Buren*, 940 F.3d 1192 (11th Cir. 2019)...............................8, 9

## STATUTES AND RULES

18 U.S.C.

§ 201(a)(3) ...............................................................................................3, 7

§ 1343.............................................................................................................4

§ 1346.............................................................................................................4

§ 1951.............................................................................................................3

Page

Statutes and rules—continued:

18 U.S.C.
    § 3143(b)(1) ..................................................................1
    § 3143(b)(1)(B)(iii) .......................................................2
    § 3143(b)(1)(B)(iv) .......................................................2

Federal Rule of Criminal Procedure 38(b) ...........................1

Federal Rules of Evidence
    401.................................................................................21
    602.................................................................................20
    608(a) ............................................................................20

United States Sentencing Guidelines
    § 2B1.1(a)(2) ................................................................15
    § 3C1.1 .........................................................................15
    Ch 5, pt. A ....................................................................15

## OTHER AUTHORITY

Eleventh Circuit Pattern Jury Instructions (Criminal) (2020)
    No. O50.2......................................................................4
    No. O70.2..............................................................4, 5, 7, 8

# INTRODUCTION

Defendant John Thomas Burnette respectfully moves this Court to grant continued release pending appeal pursuant to 18 U.S.C. § 3143(b)(1) and Federal Rule of Criminal Procedure 38(b). Burnette will advance at least two substantial issues on appeal: First, the jury instructions allowed the jury to convict Burnette without proving that Maddox had agreed to take official action on specific, identified matters, in violation of *McDonnell v. United States*, 136 S. Ct. 2355 (2016) and *United States v. Roberson*, 998 F.3d 1237 (11th Cir. 2021). Second, Agent Sweet was improperly permitted to opine that exculpatory, out-of-court statements by Burnette were "false exculpatory statements," including based on his supposed knowledge of the entire investigation. The jury instructions and the admission of Sweet's testimony conflict with Supreme Court and Eleventh Circuit precedents, and Burnette's appeal will therefore present substantial questions. Because those questions go to the heart of the government's case and Burnette's defense, it is likely that, if either question is resolved in Burnette's favor, a new trial will be required. Even if the false statements count survives, it is unlikely that Burnette's sentence on that count alone would exceed the length of this complex criminal appeal. Under these circumstances, this Court should allow Burnette to remain released pending the Eleventh Circuit's disposition of his appeal.

**ARGUMENT**

The Court "shall order the release" pending appeal of a defendant sentenced to imprisonment if he shows that: (1) he is not a flight risk or danger to the community; (2) the appeal is not for purpose of delay; (3) the appeal "raises a substantial question of law or fact;" and (4) if that substantial question is decided in his favor, the decision will likely result in reversal, a new trial, or a term of imprisonment shorter than the expected length of the appeal. *United States v. Giancola*, 754 F.2d 898, 899, 901 (11th Cir. 1985) (per curiam); *see also* 18 U.S.C. § 3143(b)(1)(B)(iii)-(iv). To raise a substantial question of law or fact, a defendant need not show that he will likely prevail in the appeal. Rather, it suffices to show "a 'close' question or one that very well could be decided the other way." *Giancola*, 754 F.2d at 901.

Burnette meets and exceeds the standard for release pending appeal. Burnette is not a flight risk or danger to the community. His appeal is not for purposes of delay. And his appeal will present multiple issues that meet the substantial-question requirement and that, if decided in his favor, are likely to lead to a new trial or a reduced sentence shorter than the length of his appeal.

## I.     Burnette Is Not Likely To Flee or Pose a Danger to Safety If Released.

Burnette is neither a flight risk nor a danger to the community. He was released on his own recognizance and without bond on the day of arraignment, ECF 68, and since then, he has appeared at every court hearing and trial date and complied

2

with all conditions of release.  As demonstrated at the sentencing hearing, Burnette has strong familial, social, and economic ties to Tallahassee.  The Court determined at sentencing that he should be permitted to self-surrender, and the government did not object.  The offense conduct in this case was non-violent, and Burnette has no prior criminal history of any kind.  ECF 506 ¶¶ 91-97.

## II.   The Appeal Raises Substantial Questions Likely To Result in a New Trial or Sentence Shorter than the Length of the Appellate Process.

Burnette will raise at least two "substantial" or "close" questions on appeal. *Giancola*, 754 F.2d at 901.  Each, if resolved in Burnette's favor, will likely result in a new trial or sentence shorter than the expected length of the appellate process.

### A.   The Jury Instructions Conflicted with Binding Precedent and Require a New Trial on Four Counts.

In at least two material respects, the jury instructions conflicted with the Supreme Court's seminal decision in *McDonnell v. United States*, 136 S. Ct. 2355 (2016), and the Eleventh Circuit's related precedent.   In *McDonnell*, the Court considered "the proper interpretation of the term 'official act'" in the federal bribery statute.  136 S. Ct. at 2367.  The statute defines an official act as "any decision or action on any question, matter, cause, suit, proceeding or controversy, which may at any time be pending, or which may by law be brought before any public official, in such official's official capacity."   18 U.S.C. § 201(a)(3).   Although *McDonnell* focused on the language of the bribery statute, the charges at issue in that case included Hobbs Act color-of-official-right extortion under 18 U.S.C. § 1951 and

3

honest services wire fraud under 18 U.S.C. §§ 1343 & 1346.  136 S. Ct. at 2365.
Because those charges both proscribe bribery, they incorporate the definitions and
limits of the federal bribery statutes.  *See Skilling v. United States*, 561 U.S. 358,
412-13 (2010).

In this case, the government agreed that four of the five counts on which
Burnette was convicted—the extortion, mail fraud, and Travel Act counts—were
subject to *McDonnell*'s interpretation of official act.  *McDonnell* applies directly to
the Hobbs Act and honest services fraud charges, since this case involves essentially
the same charges at issue in *McDonnell*—although this case charges honest services
fraud under the mail fraud rather than wire fraud statute.  *See also United States v.
Mayweather*, 991 F.3d 1163, 1185 (2021) (applying *McDonnell* to Hobbs Act color-
of-official-right extortion); Eleventh Circuit Pattern Jury Instructions (Criminal)
Nos. O50.2, O70.2 (2020) (incorporating *McDonnell* standard to Hobbs Act
extortion under color of official right and mail fraud honest services fraud pattern
instructions).  As for the Travel Act charge, the government's theory was that
Burnette violated the statute by using a facility of interstate commerce to commit
bribery under Florida state law.  However, the government specifically conceded
that there is no relevant difference between federal and state law on this point, and
expressly declined to request a separate instruction on state-law bribery.  Trial Day
12 Tr. 2457 (July 28, 2021) (Ex. R).  With the government's agreement, this Court
instructed the jury on only the *McDonnell* standard for bribery.

4

As particularly relevant here, *McDonnell* rejected the government's broad reading of "official act," enunciating several clear limits intended to cabin the official acts that can underlie a bribery or extortion conviction, and avoid vagueness, due process, and federalism concerns.  136 S. Ct. at 2372-73.  The jury instructions in this case breached those limits, individually and cumulatively encouraging the jury to convict Burnette on the type of nebulous theory of bribery rejected in *McDonnell*.  The court of appeals is likely to find the instructions plainly erroneous and to vacate the judgment and order a new trial.  At a minimum, the plain instructional errors raise a substantial question for appeal, warranting release pending appeal.

### 1.   *Specific matter*

First, this Court plainly erred in instructing the jury that it could convict Burnette even if it found that Maddox had promised to perform an official act "on *any not-yet-known matter* that might later come up for a vote."  ECF 433, at 7-8 (emphasis added).

This instruction directly conflicts with *McDonnell*, which held that the public official must promise to perform an official act on a matter that is "specific and focused."  136 S. Ct. at 2372.  The Eleventh Circuit's Pattern Instructions incorporate that requirement.  *See* Pattern Jury Instruction O70.2 ("[A public official must promise to take an official action on] something specific which requires particular attention by a public official.").

5

As the Second Circuit has held, *McDonnell* requires that the "particular question or matter" on which the official will act "*be identified at the time the official makes a promise* or accepts a payment." *United States v. Silver*, 948 F.3d 538, 558 (2d Cir. 2020) (emphasis altered) (reversing conviction in part). "*McDonnell* thus stands for the proposition that bribery requires that an official accept a payment, knowing that he is expected to use his office to influence a 'focused,' 'concrete,' and 'specific' question or matter . . . ." *Id.* at 557 (quoting *McDonnell*, 136 S. Ct. at 2369-70, 2372); *id.* at 558 ("an official must promise to influence a particular question or matter"). "[A]n open-ended promise to perform official actions 'for the benefit of the payor'" does not suffice. *Id.* at 559.

The Eleventh Circuit recently concurred with that reading of *McDonnell* in *United States v. Roberson*, 998 F.3d 1237 (11th Cir. 2021), observing that "*McDonnell* specified that the 'question or matter' to be influenced must be identified." *Id.* at 1251 (citing *McDonnell*, 136 S. Ct. at 2369-70). Critically, the government conceded the point in its post-trial opposition to Burnette's motion for judgment of acquittal. ECF 497-1, at 29-30 ("As the Eleventh Circuit has explained, although *McDonnell* specified that the 'question or matter' to be influenced must be identified, that case did not reject the retainer theory of bribery." (citing *McDonnell*, *Roberson*, and *Silver*) (internal quotation marks omitted)).

6

At the government's urging, however, the Court adopted an instruction at odds with *McDonnell*, *Silver*, *Roberson*, the Pattern Jury Instruction, and the government's current view:

| Pattern Jury Instruction O70.2 | Jury Instruction in This Case |
| --- | --- |
| [A public official must promise to take an official action on] ***something specific which requires particular attention by a public official.*** | To count as a matter that might later come before the governmental entity, ***a matter need not be identified at the time of the payment; it is sufficient if the payment is made in exchange for favorable treatment on any not-yet-known matter that might later come up for a vote.*** |

The government's opposition to Burnette's post-trial acquittal motion concedes that the instruction is erroneous.  Indeed, in light of *McDonnell* and *Roberson* the instruction is *plainly* erroneous.  Burnette therefore raises a substantial issue for appeal.

### 2.   Defining "matter"

The jury instructions were also plainly erroneous in watering down *McDonnell*'s definition of a "matter."  The Supreme Court conducted a lengthy analysis of the term in *McDonnell*, noting that the statute refers to official action on a "question, matter, cause, suit, proceeding, or controversy."  136 S. Ct. at 2368 (quoting 18 U.S.C. § 201(a)(3)).  The Court explained that these terms "connote a formal exercise of governmental power, such as a lawsuit, hearing, or administrative

7

determination." *Id.* The Court rejected the government's view that an agreement to take action on "workaday functions, such as the typical call, meeting, or event," could constitute federal bribery. *Id.* The Court vacated the conviction because "the instructions did not adequately explain to the jury how to identify the 'question, matter, cause, suit, proceeding or controversy.'" *Id.* at 2374.

The Eleventh Circuit has elaborated upon *McDonnell*'s guidance, holding that jury instructions defining "matter" *must* include *McDonnell*'s "critical" analogy to "a lawsuit, hearing, or administrative determination," otherwise they fail to convey the weight and seriousness of the matter on which the official must promise to act. *United States v. Van Buren*, 940 F.3d 1192, 1203 (11th Cir. 2019), *rev'd in part on other grounds*, 141 S. Ct. 1648 (2021). The Pattern Jury Instruction reflects that language. Eleventh Circuit Pattern Jury Instructions (Criminal) No. O70.2 (2020). In *Van Buren*, the Eleventh Circuit reversed a conviction for honest services fraud where the instructions "omitted" *McDonnell*'s analogy and thus "unravel[ed] statutory limitations that the Supreme Court identified concerning the meaning of 'official act.'" 940 F.2d at 1203.

In a later case, the Eleventh Circuit clarified that jury instructions do not always need to include the precise language of the *McDonnell* analogy if it does not fit the facts of the case, so long as the instructions otherwise provide "guidance to the jury by defining the alleged 'official act' at issue in each Hobbs Act extortion case." *Mayweather*, 991 F.3d at 1184-86. That includes ensuring that the jury

8

understands that the public official must act on a matter "of the same gravity as a lawsuit, hearing, or administrative determination." *See id.* at 1186 (quoting *Van Buren*, 940 F.3d at 1204). Where the instructions fail to provide that critical guidance, error has occurred. *See id.* (vacating convictions and remanding to the district court to write an instruction "that fits the facts of this case").

Burnette requested the pattern instruction containing the "critical" *McDonnell* analogy. ECF 283, at 1 n.1. This Court did not give it. Trial Day 12 Tr. 2450 (July 28, 2021) (Ex. R). Instead of instructing the jury that it must find that Maddox agreed to act "on a question, matter, cause, suit, proceeding, or controversy . . . similar in nature to a lawsuit before a court, a determination before an agency, or a hearing before a committee," as the Pattern Jury Instruction and *Van Buren* instruct, the Court simplified the definition to a "matter." ECF 433, at 7-8.

The failure to define "matter" is particularly problematic in light of the jury instruction on the third, influencing-other-public-officials theory of an official act. The Court attempted to write instructions tailored to the facts of the case, but the instruction on this third theory left the jury in the same position as the *McDonnell*, *Van Buren*, and *Mayweather* juries. The Court instructed the jury that a public official can commit an official act by "pressuring or advising another official, including another commissioner or a staff member, on the same kind of *matter* . . . . if Mr. Maddox knew or intended that the commissioner or staff member would take formal action on that advice on a *matter* that could come before the local

9

governmental entity." ECF 433, at 8 (emphases added). That instruction gave the jury no standard for determining what constitutes a "matter" that could come before a staff member. Just as in *McDonnell*, lacking guidance as to what constitutes a "matter," the jury could have concluded that "a typical meeting, call, or event"—for example, agreeing to meet with Southern Pines—was itself a "matter" on which a staff member might take "formal action." *McDonnell*, 136 S. Ct. at 2374.

### 3. *It is reasonably probable that these errors affected the trial's outcome, and they impugn the fairness of the proceedings.*

Because Burnette did not object to these plainly erroneous instructions, he will have the burden of showing that the errors "affected [his] substantial rights" by influencing "the outcome of the district court proceedings." *United States v. Madden*, 733 F.3d 1314, 1323 (11th Cir. 2013) (quoting *United States v. Olano*, 507 U.S. 725, 734 (1993)). For the reasons set forth below, they undoubtedly did; at a minimum, the question is "substantial" or "close," warranting release pending appeal. *Giancola*, 754 F.2d at 900-01 (emphasis added).

The instructional errors substantially prejudiced Burnette. Under *McDonnell* and *Roberson*, the Court should have instructed the jury that it could only convict Burnette if Maddox agreed to perform official acts as to a *specific, identified* matter. Instead, the Court instructed the jury that the matter "need not be identified at the time of payment." ECF 433, at 8. On this record, it is probable that the jury convicted Burnette not for participating in a scheme to bribe Maddox for official

10

acts on a specific project, but for an unidentified, future project.  This is exactly what *McDonnell* and *Roberson* forbid.

No evidence establishes that Maddox, Burnette, and the agents reached an agreement to pay Maddox for official acts on a *specific* matter.[1]  In the alternative, and without conceding the sufficiency of the evidence, the government's evidence that Maddox agreed to perform official acts on specific matters was extraordinarily weak—an unsurprising fact given that the agents were not actually pursuing any specific matters.  In a phone call on October 24, 2016, shortly before the agents began sending Carter-Smith's lobbying firm the critical payments, Burnette expressed concern about the agents paying without knowing what matter they intended to pursue, saying, "I guess the big question I got is, I mean, I assume you guys are fairly certain you're going to do a deal in Tallahassee."  Gov. Ex. 40 (Ex. G), at 3.  Miller responded "we're gonna get something," and suggested budgeting the payments as "a monthly expense."  *Id.*  Burnette responded, "I just hate to see you guys spend money and not know exactly what you're doing," but said their approach could make sense "[a]s long as you know you're going to do a deal in Tallahassee."  *Id.*  In case there was any doubt as to the import of this exchange, the government asked Miller at trial to explain Burnette's "hesitancy" in this

---

[1] Burnette reserves the right to argue on appeal that this Court erred in denying acquittal on this ground.  *See McDonnell*, 136 S. Ct. at 2375 (instructing court of appeals to grant acquittal if the evidence was insufficient to prove an "official" act as clarified in *McDonnell*).

conversation.  Miller explained, "He wanted us to wait until we knew specifically which project we were going to do before we started making payments. . . ."  Trial Day 7 Tr. 1249 (July 21, 2021) (Ex. N).  A properly instructed jury would have understood this discussion of payments for a "not-yet-known matter" as *exculpatory*, but instead the instructions required the jury to view the conversation as evidence of guilt.

So too several days later.  In a conversation on October 29, 2016, Sweet confirmed that the contemplated payments were not for specific matters.  *See* Gov. Ex. 44 (Ex. H), at 3.  Burnette said:  "This is definitely a pre-emptive approach you're taking."  Sweet responded:  "Absolutely."  *Id.*  Sweet later confirmed that he wanted to pay Maddox to "[w]in the community" so he would be "there" when they had an "ask."  *Id.*  That is not bribery under *McDonnell*.  *See supra* p. 5-6.

Even as the sting operation progressed, no evidence proved that Maddox took payments in exchange for official acts on a specific, identified matter.  To the extent the agents discussed particular real estate projects with Burnette or Maddox, those projects did not require Maddox's help.  For example, the agents discussed developing a property in Fallschase, and specifically getting Tallahassee to annex the land.  But when the agents brought up getting Maddox's help for annexation, Burnette told them not "to get ahead of yourself."  Def. Ex. 230 (Ex. C), at 10.  He explained that "[t]hat's a done deal" and "a checkbox," so they were "not going to have an issue there" and would not need Maddox's assistance.  *Id.* at 10-11; *see also*

12

Def. Ex. 226 (Ex. A), at 3 (Burnette describing annexation as "done"); Def. Ex. 228 (Ex. B), at 3 (describing annexation as "a no-brainer" and "a done deal").

So too with the other project the agents discussed with Burnette:  Cascades Park.  Burnette was "on the fence" about pursuing that project, Def. Ex. 852 (Ex. F), at 2, and preferred to wait another twelve months for a nearby development to happen first, Def. Ex. 350 (Ex. D), at 7; Def. Ex. 230 (Ex. C), at 33, 35-36.  And when the agents asked Maddox if he could delay ("throttle") the city's request for proposal for the property, he responded "that's a natural thing" that would "happen anyway" because the city didn't have the capacity to handle two requests at the same time.   Gov. Ex. 50 (Ex. I), at 24.   No evidence established that Maddox took payments in exchange for official acts on the Cascades Park project.  Even late in the supposed scheme, the agents were interpreting the payments as paying Maddox to "make sure that we have enough votes to do *whatever it is we are asking him to do*."  Trial Day 9 Tr. 1685 (July 23, 2021) (Ex. P) (emphasis added).

Given the absence of evidence tying the supposed bribes to any specific matter, it is unsurprising that the government asked for an instruction that the jury could convict if Maddox agreed to be on "retainer" "as opportunities arise," even if the payments were not "tie[d] . . . to specific acts."  Trial Day 11 Tr. 2398 (July 27, 2021) (Ex. Q).  The prosecutors suggested that they needed broad language "to give us room to make the arguments we need to make."  *Id.* at 2399.  The Court drafted the erroneous "as-yet-unknown" language in response.  Trial Day 12 Tr. 2438 (July

13

28, 2021) (Ex. R).  In closing, the prosecution described the agreement as "Maddox would be there for them, whatever they need," to "clear roadblocks" and "take whatever official acts were needed."  Trial Day 15 Tr. 3096-97 (Aug. 11, 2021) (Ex. T).  At a minimum, a substantial question exists as to whether a properly instructed jury would have found Burnette guilty beyond a reasonable doubt on this record if it had to conclude that Maddox had agreed to act on specific, identified matters.

The government also leaned into the pressuring-other-officials theory of liability.  The instructions told the jury that it could convict Burnette if Maddox agreed to persuade a city staff member to take "formal action" on any "matter"—a formulation with a "standardless sweep" that risks running aground on the "vagueness shoal" the *McDonnell* Court sought to avoid.  136 S. Ct. at 2373 (citations omitted).  The government repeatedly argued this theory to the jury in closing, highlighting Maddox's "influence" on city manager Rick Fernandez, Trial Day 15 Tr. 3081-82, 3095, 3097, 3109 (Aug. 11, 2021) (Ex. T)—without proving that *any* of the (mostly unspecified) actions that Fernandez might take "involved a formal exercise of governmental power that is similar in nature to a lawsuit before a court, a determination before an agency, or a hearing before a committee." *McDonnell*, 136 S. Ct. at 2372.

The likelihood that the jury convicted Burnette on a bribery theory foreclosed by *McDonnell* raises a substantial question as to "the fairness, integrity or public reputation of judicial proceedings."  *Madden*, 733 F.3d at 1320 (citation omitted).

14

As the Supreme Court explained, the government's "expansive interpretation" of actionable bribery raises "significant constitutional concerns" related to vagueness, due process, arbitrariness, and federalism. *McDonnell*, 136 S. Ct. at 2372-73. The Court's limitations on actionable bribery protect permissible "interactions between state officials and their constituents." *Id.* at 2373. That concern is particularly stark here, where Sweet, the undercover FBI agent and the government's key witness, testified that he believed giving campaign contributions and personal gifts, or contributing to a politician's relative's charitable cause, was a way of "building collateral" for future "horse trad[ing]" and is "improper," Trial Day 9 Tr. 1828-29 (July 23, 2021) (Ex. P)—directly at odds with *McDonnell*. The undercover agents pursued an invalid theory of what counts as criminal bribery; allowing Burnette's convictions to stand when the jury was instructed on a plainly overbroad theory of bribery justifies exercising plain error review.

The defective jury instructions require acquittal or retrial on four of the five counts against Burnette. *See supra* p. 3-4. The sole remaining false statements count would result in a sentence shorter than the expected length of Burnette's appeal. The false statements conviction would yield an offense level of eight (inclusive of the two-level obstruction enhancement imposed by the Court). *See* U.S.S.G. §§ 2B1.1(a)(2), 3C1.1. With Burnette's lack of criminal history, his Guidelines range would be 0-6 months' imprisonment, *see id.* Ch. 5, pt. A, shorter than the

length of the average Eleventh Circuit appeal, and likely much less than the average complex criminal appeal.

## B.    The Court's Erroneous Admission of FBI Agent Testimony Opining on Burnette's Truthfulness Requires a New Trial on All Counts.

The government's key witness repeatedly opined that Burnette's statements to the undercover agents that they should not bribe Maddox were "false exculpatory statements."   The Court's admission of this testimony, over defense objection, violated a long line of precedent prohibiting such testimony and establishing its prejudicial effect.   This issue presents a substantial question for appeal and, if resolved in Burnette's favor, will likely require a new trial on all counts.

### 1.    Agent Sweet repeatedly opined on Burnette's truthfulness.

The key issue in dispute was whether Burnette and Maddox colluded to obtain bribes for Maddox in exchange for Maddox's performance of official acts.   *See* Gov. Opp. to Motion for Judgment of Acquittal at 16, ECF 497-1 (conceding that the "evidence must establish coordination with the public official").   The government based its case largely on recorded conversations and other communications between Burnette, Maddox, and the undercover agents.   Those conversations, however, contained both inculpatory and exculpatory statements and facts.   As a result, at trial, the parties confronted the jury with two different interpretations of the evidence— and the credibility of the witnesses and their out-of-court statements was key.

16

As to the inculpatory out-of-court statements: Burnette explained that he postured about his ability to influence the City Commission in order to "placat[e] Brian Butler and Mike Sweets," two of the undercover agents. Trial Day 13 Tr. 2549-2550 (Aug. 9, 2021) (Ex. S). He described what he believed to be an implicit understanding with Agent Miller that he "said what [Miller] wanted [him] to say" in order to convince the agents of the viability of proposed development projects. *Id.* at 2553.

As to the exculpatory out-of-court statements: Throughout Burnette's year-and-a-half-long relationship with the undercover agents, including at the January 9, 2017 meeting in Dallas, he repeatedly told them there was no need to pay bribes; their intended development projects would succeed on their own merits. Def. Ex. 230 (Ex. C), at 10-11 (Dec. 3, 2016) (Fallschase annexation is "a done deal. That's like a checkbox. . . . I can get that done without even talking to Rick. . . . Because you're agreeing to pay more tax . . . you're not going to have an issue there"); Def. Ex. 226 (Ex. A), at 3 (Dec. 3, 2016) (annexation: "Oh, that's done"); Def. Ex. 228 (Ex. B), at 3 (Dec. 3, 2016) (annexation a "no-brainer," "a done deal"); Gov. Ex. 58 (Ex. J), at 5, 10 (Dec. 6, 2016) (Burnette: "with or without the Government . . . we'll get the annex. It's just a foregone conclusion, because the math works."; Sweet: "[what] you're basically talking about is, is why, when you and I've had these discussions about, 'Hey you don't need to pay anybody anything 'cause you've already built up that collateral . . . .'" Burnette: "Collateral you cannot buy, right?"

Sweet: Eh, you can, you can buy it, but . . . we don't need to . . ."  Burnette: "Yeah, that's right . . ."); Gov. Ex. 63 (Ex. K), at 3 (Jan. 9, 2017 Dallas meeting) ("[W]hy would you pay for the city to make more money?"); Def. Ex. 374 (Ex. E), at 2 (Mar. 13, 2017) (Fallschase:  "It's not like we're pushing a ball uphill;" it's "developing a project that the city has wanted now for, I think, 25, 30 years").  Burnette's defense was that when he learned after the fact that the undercover agents had begun sending payments to Maddox's girlfriend's lobbying firm, he panicked and got angry.  Gov. Ex. 63 (Ex. K), at 9 ("Say what?"); *see* Trial Day 13 Tr. 2633 (Aug. 9, 2021) (Ex. S) ("I'm having a heart attack . . . I'm worried what they have done is going to cause us—someone to be revengeful against us"); Trial Day 9 Tr. 1836 (July 23, 2021) (Ex. P) (Sweet testimony that Burnette was angry and "red in the face").  On the element of intent, the defense rested in significant part on whether the jury credited Burnette's prior, real-time exculpatory statements.

Respectfully, the Court abused its discretion in allowing the government to introduce testimony from undercover agent Sweet that Burnette's repeated attempts to discourage the agents from bribing Maddox were "false exculpatory" statements. Sweet offered this improper testimony in direct examination regarding two such conversations—a December 6, 2016 phone call and an April 15, 2017 text—in which Burnette urged the agents to act lawfully.  In the December 2016 phone call, Burnette explained that he didn't want Sweet "to think that you can write a check and get what you want," or "that you can effectively pay these people and get a vote."  Gov.

18

Ex. 58 (Ex. J), at 2.  Burnette emphasized: "[W]e still have to win."  *Id.*  Nodding

to his expertise as an FBI agent, Sweet repeatedly testified that Burnette's

communication was "what we call a false exculpatory statement" and "a false

statement."  Trial Day 9 Tr. 1663 (July 23, 2021) (Ex. P); *see also id.* at 1665

(similar); *id.* at 1671 ("completely a false exculpatory telephone call").  Further,

Sweet speculated over objection that Burnette "was directed to make this call" by

Maddox.  *Id.* at 1670.

Later in Sweet's testimony, he disputed the sincerity of another exculpatory

statement by Burnette.  In an April 2017 text, Burnette sent a news link about a

successful, unanimous city commission vote on a different redevelopment project,

adding that he "did not pay a $" because "Tallahassee is just about doing the right

thing." Gov. Ex. 204 (Ex. L).  Sweet told the jury that this text, too, consisted merely

of "false exculpatory comments."  Trial Day 9 Tr. 1689 (July 23, 2021) (Ex. P).  The

government's elicitation of this prejudicial opinion testimony on direct then caused

the defense to focus part of its cross-examination on that same opinion.  *See infra*

p. 25.

Sweet continued the refrain in redirect examination.  The prosecutor asked

Sweet what the basis was for his "conclusion" that comments by Maddox were "false

exculpatory."  Trial Day 9 Tr. 1856 (July 23, 2021) (Ex. P).  Responding more

broadly about "those type of statements," Sweet responded that he based his opinion

on "the fact that what he's telling me isn't consistent with what I have seen, and --

in prior statements from him both from him and Mr. Burnette, and also, my knowledge of the overall investigation, my general knowledge of the overall investigation." *Id.*

The Court ruled broadly during Sweet's direct examination that it would permit questioning regarding "anything that explains what the FBI did and why, what their understanding of the conversation was." Trial Day 8 Tr. 1654 (July 22, 2021) (Ex. O). Following this ruling, the defense objected twice to questions that elicited Sweet's "false exculpatory" testimony. Trial Day 9 Tr. 1663, 1670 (July 23, 2021) (Ex. P). Each objection was overruled.

### 2. The Court's admission of Sweet's opinion testimony was improper and will likely require a new trial on all counts.

The Court's admission of a government agent's opinion testimony on the truthfulness of the defendant's exculpatory statements violates a long line of precedent and greatly prejudiced the defense.

The Eleventh Circuit has explained the many reasons why opinion testimony as to the truthfulness of another witness's statements is improper. First, "[w]hile Rule 608(a) permits a witness to testify, in the form of opinion or reputation evidence, that another witness has a general character for truthfulness or untruthfulness, that rule does not permit a witness to testify that another witness was truthful or not on a specific occasion." *United States v. Schmitz*, 634 F.3d 1247, 1268 (11th Cir. 2011). Such testimony further violates Rule 602, which prohibits

lay witnesses from testifying to matters for which they lack personal knowledge, and Rule 401, "because one witness's opinion that another person has or has not lied does not make it more or less likely that the person actually lied." *Id.* at 1269. Perhaps most significantly, "were-they-lying questions invade the province of the jury, as credibility determinations are to be made by the jury, not the testifying witness." *Id.*

This rule applies with equal force to a witness's opinions about the credibility of another witness's out-of-court statements. In *United States v. Hipps*, 857 F. App'x 1002 (11th Cir. 2021) (Mem.) (per curiam), the Eleventh Circuit held, on plain-error review, that a law enforcement officer's repeated testimony that he "no longer believed anything that [the defendant] was saying" during investigative interviews constituted reversible error. *Id.* at 1004. Because the agent's testimony "served no purpose other than to undermine [the defendant's] credibility," it was inadmissible. *Id.* at 1008; *see also United States v. Sanchez-Lima*, 161 F.3d 545, 548 (9th Cir. 1998) (finding reversible error where border patrol officer testified that he believed his colleague's out-of-court statements explaining a violent incident with the defendant).

The danger that an opining witness may usurp the jury's prerogative to make credibility determinations is heightened when the witness is a government agent. Such testimony improperly suggests to the jury that the agent has reached his opinion based on knowledge of the entirety of the investigation, which may include evidence

21

not before the jury.  *See, e.g.*, *United States v. Eyster*, 948 F.2d 1196, 1207 (11th Cir. 1991) (finding reversible error where "the prosecutor threw the weight of her office behind the witness' testimony and implicitly vouched for the witness by indicating that information not before the jury supported [the witness's] credibility").  Here, Sweet made that implicit suggestion explicit, telling the jury that he based his credibility opinion on his "general knowledge of the overall investigation."  Trial Day 9 Tr. 1856 (July 23, 2021) (Ex. P).

Courts allow opinion testimony on truthfulness of particular statements only in the limited situation where it is necessary to explain subsequent actions by the testifying witness.  For example, in *United States v. Henderson*, 409 F.3d 1293 (11th Cir. 2005), the Eleventh Circuit upheld admission of a detective's testimony that he initially believed a defendant's denial of guilt to explain the detective's delay in reporting.  *Id.* at 1299.  Even so, the court observed that "such testimony might be improper if the government had attempted to use this line of questioning as an indirect way of bolstering [one witness's] credibility or attacking that of [the defendant]."  *Id.*

But here, Sweet's testimony did not explain his subsequent actions—he was simply calling Burnette a liar.  For example, in response to the government playing the December 6, 2016 phone call, the government asked Sweet, "when you got this phone call from the defendant . . . what were you thinking was going on?"  Trial Day 9 Tr. 1663 (July 23, 2021) (Ex. P).  Sweet responded:

22

> I immediately thought what this was what we call a false exculpatory statement.   "Exculpatory" means to remove from guilt; "false exculpatory" means it's a false statement being made about guilt, removing one's self from guilt.  As soon as I heard this phone call and I knew Mr. Maddox's concerns about us being potential FBI agents, maybe even having recorded him, I immediately thought to myself, okay, this is the false exculpatory statement that they are making to me.  In case I'm recording this conversation, they want to make it -- he, J.T., wants to make it clear that he and Mr. Maddox are not involved in any kind of criminal activity.

*Id.*  After Sweet provided that lengthy explanation that he thought Burnette was lying and that this phone call was a conniving ploy by Burnette and Maddox, the government simply moved on.  *Id.* ("Please continue [the tape].").  The testimony was a naked attempt to discredit Burnette's real-time exculpatory statement; Sweet made no effort to explain how his understanding informed his subsequent investigative actions, and the government did not ask him about those actions during this exchange.

Similarly, the government invited Sweet to opine on what Burnette's exculpatory texts meant.  *Id.* at 1689.  Sweet stated, "I think he's trying to, again, make false exculpatory comments to us to basically show that:  Hey, listen, everything done in Tallahassee is being done above board."  *Id.*  Again, the government made no effort to tie that understanding to Sweet's investigative strategy.  *See id.*

To the contrary, Sweet testified that the supposedly falsely exculpatory phone call had *no effect* upon his relationship with Burnette.  *Id.* at 1670 ("I thought I stood

23

exactly where I stood before.").  And after Sweet testified that he believed Burnette's later text message contained false exculpatory statements, the government merely asked him to read the remainder of the messages in the text conversation aloud, then ended its direct examination.  Neither the government nor Sweet indicated during that testimony that the text conversation influenced the agent's later actions.

The testimony therefore did "not help to explain the investigation or relay factual events;" rather, as in *Hipps*, "it served to discredit [Burnette]." *Hipps*, 857 F. App'x at 1008.  In *Hipps*, the Eleventh Circuit found similar testimony so contrary to Eleventh Circuit precedent as to constitute plain error and require vacatur. *Id.* at 1007-08.   The admission of Sweet's testimony discrediting Burnette raises a "substantial question" for appeal. *Giancola*, 754 F.2d at 901.

The prejudice to Burnette's defense was palpable.  The government built its case on Burnette's out-of-court inculpatory statements to the undercover agents. *See, e.g.*, Trial Day 15 Tr. 3059-60 (Aug. 11, 2021) (Ex. T).   But while the prosecutors urged the jury to pay attention to "what [Burnette] said to the undercovers . . . when he didn't know anyone was watching," *id.*, they also offered a government witness who told the jury not to believe Burnette's contemporaneous, recorded statements if they undermined the government's story.   Those very exculpatory statements were key building blocks of the defense's case; the defense featured both the December 2016 call and April 2017 texts, as well as other similar exculpatory statements, in opening statement.  Trial Day 1 Tr. 92, 95-96, 100 (July

12, 2021) (Ex. M).   The false statements charge, too, hinged on the jury's determination of Burnette's truthfulness—and Sweet's improper testimony insinuated to the jury that Burnette had already practiced lying to federal agents in his previous interactions with Sweet.   Sweet's testimony improperly allowed the government to put its thumb on the scale on one of the most important issues in the case.

To be sure, as this Court noted during the sentencing hearing, the defense addressed Sweet's "false exculpatory" testimony in both cross-examination and in closing.   But that only underscores the prejudice to the defense.   Faced with the admission of such prejudicial testimony over its objection, the defense had no choice but to attempt to undermine the testimony "to offset the prejudicial effect." *Brown v. Dugger*, 831 F.2d 1547, 1553 (11th Cir. 1987); *see also Chase Manhattan Bank v. Rood*, 698 F.2d 435, 439 (11th Cir. 1983) ("It would be unfair to place the plaintiff in the untenable predicament of foregoing any rebuttal . . . after failing in its vigorous attempts to exclude that evidence.").   As a result, the defense cross-examined Sweet on his opinions, as well as his lack of evidence for them. *E.g.*, Trial Day 9, Tr. 1795, 1818-19 (July 23, 2021) (Ex. P).   And the defense sought to mitigate Sweet's testimony by attempting to highlight the unfairness of the government's approach. Trial Day 15 Tr. 3178 (Aug. 11, 2021) (Ex. T) ("[T]he only response you get from Sweet was that . . . anything [Burnette] says that is beneficial is a false exculpatory statement."); *id.* at 3180 ("Mr. Sweets is one of those people that has come into this

25

entire endeavor and conversations with my client hearing what he wants to hear."). The defense focused so heavily on Sweet's testimony precisely because it was so damaging, striking as it did against core evidence on which the defense built its opening statement.

This violation of fundamental, well-known principles of evidence presents a substantial question for appeal.  If the issue is decided in Burnette's favor, it is likely to require vacatur and a new trial on all counts.

## CONCLUSION

For the foregoing reasons, Burnette respectfully requests that the Court grant this motion for release pending appeal.

26

Dated:  November 12, 2021   Respectfully submitted,

           */s/ Amy Mason Saharia*
           Amy Mason Saharia (pro hac vice)
           asaharia@wc.com
           Williams & Connolly LLP
           725 Twelfth Street, N.W.
           Washington, DC 20005
           Telephone: (202) 434-5900

           Gregory W. Kehoe
           Florida Bar No. 0486140
           kehoeg@gtlaw.com
           Jordan L. Behlman
           Florida Bar No. 111359
           behlmanj@gtlaw.com
           Kayli Danielle Smendec
           Florida Bar No. 1018202
           smendeck@gtlaw.com
           Greenberg Traurig, P.A.
           101 East Kennedy Blvd., Suite 1900
           Tampa, FL 33602
           Telephone: (813) 318-5700
           Facsimile: (813) 318-5900

           R. Timothy Jansen
           Florida Bar No. 0691208
           jansen@jansenanddavis.com
           Jansen & Davis, P.A.
           125 N Franklin Blvd.
           Tallahassee, FL 32301
           Telephone: (850) 224-1440
           Facsimile: (850) 224-0381

27

Adam Komisar
Florida Bar No. 86047
adam@komisarspicola.com
PO Box 664
Tallahassee, FL  32302
Telephone: (850) 591-7466
Facsimile: (850) 320-6592

Michael Ufferman
Florida Bar No. 114227
ufferman@uffermanlaw.com
Michael Ufferman Law Firm, P.A.
2022-1 Raymond Diehl Road
Tallahassee, FL  32308
Telephone:  (850) 368-2345
Facsimile: (850) 224-2340

## LOCAL RULE 7.1(F) CERTIFICATE

I, Amy Mason Saharia, counsel for defendant John Thomas Burnette, certify that this paper contains 6,487 words, which complies with the word limit requirements set forth in Local Rule 7.1(F).

*/s/ Amy Mason Saharia*
Amy Mason Saharia

## CERTIFICATE OF CONFERENCE

I, Amy Mason Saharia, counsel for defendant John Thomas Burnette, certify that counsel for defendant conferred with the United States of America regarding the relief sought in this motion.  The United States of America opposes this motion.

*/s/ Amy Mason Saharia*
Amy Mason Saharia

## CERTIFICATE OF SERVICE

I, Amy Mason Saharia, counsel for defendant John Thomas Burnette, certify that on November 12, 2021, a copy of the foregoing Motion for Continued Release Pending Appeal, and its accompanying exhibits, was filed with the Clerk and served on the parties through the Court's electronic filing system.

*/s/ Amy Mason Saharia*
Amy Mason Saharia

29